IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 5, 2019 Session

## IN RE ESTATE OF JAMES RONALD HUNTER

**Appeal from the Probate Court for Davidson County**
**No. 17P74      David Randall Kennedy, Judge**

_____

### No. M2019-00084-COA-R3-CV

_____

The issue on appeal is whether a codicil to the decedent's will was effective to revoke or amend two revocable trusts. Just hours prior to his death, the decedent got married and executed a fifth codicil to his will that purportedly devised two residential properties to his new wife. However, the decedent previously conveyed the properties to revocable trusts by deeds that were properly recorded. Therefore, the decedent did not own either of the properties at the time of his death. The principal beneficiary of each trust was the decedent's minor son from a previous marriage. After the will and five codicils were admitted to probate, the court-appointed guardian ad litem for the decedent's minor child filed a motion in the probate court to determine the ownership of the two properties. Following briefing of the parties and a hearing, the probate court determined that the method for amendment or revocation of the trusts as specified in the trusts was the exclusive method, and the fifth codicil failed to substantially comply with the method required by the trusts. Therefore, acting pursuant to Tenn. Code Ann. § 35-15-602(c), which does not allow a codicil or any other method to revoke or amend a revocable trust if the terms provide an exclusive method, the court ruled that the codicil was ineffective to amend or revoke either trust. Accordingly, the properties were owned by and remained subject to the terms of each trust. We affirm.

## Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate Court Affirmed

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Blakeley D. Matthews and John D. Kitch, Nashville, Tennessee, for the appellant, Nuhad Khoury.

Jennifer C. Surber, Nashville, Tennessee, Guardian Ad Litem for the appellee, J.H.H.[1]

_____

[1] This court will protect the identity of the decedent's minor child by initializing his name.

Philip N. Elbert, Stephen M. Montgomery, J. Isaac Sanders, James S. Higgins, Benjamin J. Miller and Donald K. Byrd, Nashville, Tennessee, for *amicus curiae*, Leann Smith, mother of J.H.H.

Blaine H. Smith and Ryan Lee, Nashville, Tennessee, for the appellee, Pendleton Square Trust Company, LLC.

**OPINION**

James Ronald Hunter ("Mr. Hunter") died of cancer on January 6, 2017. On the day before his death and while receiving in-home hospice care, Mr. Hunter married Nuhad Khoury ("Ms. Khoury") and executed the Fifth Codicil to his Last Will and Testament (the "Fifth Codicil"). The Fifth Codicil purportedly devised to Ms. Khoury two pieces of real property: a residential property on Cargile Lane in Nashville, Tennessee (the "Cargile Property") and a residential property on Mercedes Drive in Fort Lauderdale, Florida (the "Mercedes Property").

At the time of Mr. Hunter's death, however, neither property was owned by Mr. Hunter. Instead, title to each property had previously been conveyed by deed to two trusts, of which Mr. Hunter was the sole Grantor and the sole Trustee. The owner of record of the Cargile Property was the J.H.H. Cargile Trust (the "Cargile Trust"), and the owner of record of the Mercedes Property was the James Ronald Hunter Trust (the "Hunter Trust") (collectively, the "Trusts"). Mr. Hunter's 11-year-old son, J.H.H., was a primary residual beneficiary of each trust.

The day after Mr. Hunter died, Ms. Khoury filed a petition in the Juvenile Court of Davidson County to obtain custody of J.H.H. Shortly thereafter, J.H.H.'s mother, Leann Smith, filed a counter petition for custody, and the Juvenile Court appointed attorney Aderonke Kehinde as J.H.H.'s guardian ad litem for the custody proceedings.[2]

One week later, on January 13, 2017, Carolyn Faye Hunter Lampley, attorney Mary Frances Rudy, and Ms. Khoury filed a Petition to Probate the Will and Codicils in the Probate Court of Davidson County and to be appointed Co-Executors of the estate.[3] By order entered on February 1, 2017, Mr. Hunter's will and five codicils were admitted

---

[2] The Juvenile Court awarded custody of J.H.H. to his mother and grandmother.

[3] In his will, Mr. Hunter designated Ms. Lampley, Ms. Rudy, and Ms. Khoury as co-executors of his estate. Pursuant to the terms of each trust, they also succeeded Mr. Hunter as successor co-trustees of the Trusts following his death.

to probate and Ms. Lampley, Ms. Rudy, and Ms. Khoury (the "Co-Executors") were appointed Co-Executors of the Estate of Mr. Hunter.

The petition to probate Mr. Hunter's will did not request the appointment of a guardian ad litem to protect J.H.H.'s interests in the estate proceedings. However, on May 2, 2018, upon the motion of Ms. Kehinde, J.H.H.'s guardian ad litem, the Juvenile Court entered a restraining order against Ms. Khoury, preventing her from disposing of any assets listed in the Fifth Codicil until the Juvenile Court received notice that the Probate Court appointed a guardian ad litem to protect J.H.H.'s interests.

The Probate Court appointed attorney Jennifer Surber to serve as the guardian ad litem for J.H.H. in the probate proceedings. Shortly thereafter, Ms. Surber initiated this proceeding by filing a Motion for an Order Declaring Ownership of Certain Real Estate, asking the Probate Court to determine the ownership of the Cargile and Mercedes Properties. At issue was whether the Fifth Codicil effectively revoked or amended the Trusts.

The evidence presented to the Probate Court proved the Trusts were revocable and amendable until Mr. Hunter's death; however, each of the Trusts specified that "[a]ny amendment to this Trust shall be made by written instrument signed by both me, as Grantor, and the Trustee, and any revocation of this Trust shall be made by me in writing to the Trustee." Additionally, it was proven that months prior to the execution of the Fifth Codicil, Mr. Hunter amended the Hunter Trust three times, and each amendment was in compliance with the foregoing requirements.

In its Order Declaring Ownership of Certain Real Estate entered on December 13, 2018, the Probate Court made the following pertinent findings and rulings:

> 8. There are no written amendments signed by the Decedent in both his capacity as the Grantor and the Trustee of the Trusts that give the Florida Property or the Cargile Property to Nuhad Khoury outright. Nowhere in the Fifth Codicil does the Decedent sign in his capacity as both the Grantor and the Trustee of the James Ronald Hunter Trust and the Grantor and the Trustee [of the] J.H.H. Cargile Trust. There is no revocation of the Trusts made in writing by the Settlor to the Trustee. The Court, therefore, finds that the Decedent did not substantially comply with the method for modification set out in the terms of the Trusts, as required by Tenn. Code Ann. § 35-15-602(c)(1).

> 9. Tenn. Code Ann. § 35-15-602(c) does not allow a codicil or any other method to revoke or amend a revocable trust if the terms provide an exclusive method. Tenn. Code Ann. § 35-15-602(c) provides the following:

The settlor may revoke or amend a revocable trust: (1) By substantial compliance with a method provided in the terms of the trust; or (2) **If** the terms of the trust do not provide a method or the method provided in the terms is not expressly made exclusive, by:

(A) A later will or codicil that expressly refers to the trust or specifically devises property that would otherwise have passed according to the terms of the trust; or

(B) Any other method manifesting clear and convincing evidence of the settlor's intent. (emphasis added)

10. The Court finds that when an exclusive method for modification is provided for in a revocable trust instrument, the Court is required to look to and follow the terms of that instrument and the Court finds it cannot revoke or amend the instrument in any other way, other than is provided in the revocable trust instrument. Both the James Ronald Hunter Trust and the J.H.H. Cargile Trust have terms that provide an exclusive method for trust amendments, and a codicil is not the method specifically provided for revocation or amendment in the revocable trust instruments. In the Fifth Codicil, the Decedent does not expressly revoke or set aside the terms of the revocable trust instruments in the manner required by the instruments, and therefore, the Fifth Codicil does not operate to amend or revoke the James Ronald Hunter Trust or the J.H.H. Cargile Trust.

11. The Court, therefore, finds that:

(a) the Cargile Property is owned by the J.H.H. Cargile Trust, and is subject to administration under the terms of the J.H.H. Cargile Trust; and
(b) the Florida Property is owned by the James Ronald Hunter Trust, and is subject to administration under the terms of the James Ronald Hunter Trust.

12. The Court finds that the Decedent did not own the Cargile Property or the Florida Property at the time of his death, and therefore, could not devise those properties to Nuhad Khoury through the Fifth Codicil, based upon the existence of the respective quitclaim deeds and all of the reasons set forth above.

This appeal by Ms. Khoury followed.[4]

## ANALYSIS

The dispositive issue on appeal is whether the Fifth Codicil was effective to revoke or amend the Hunter Trust[5] and the Cargile Trust.[6]

The guardian ad litem for J.H.H. contends the method for amendment and revocation specified in the Trusts was exclusive, and the Fifth Codicil to Mr. Hunter's will did not substantially comply with the specified method because (1) Mr. Hunter did not sign the Fifth Codicil in his capacity as both Grantor and Trustee, and (2) the Trusts do not expressly provide that a will or codicil to a will is effective to amend or revoke the Trusts. Therefore, neither of the Trusts were amended or revoked, and as a consequence, the two properties are owned by and subject to the dispositive provisions of the respective Trusts.

Conversely, Ms. Khoury contends the stated method for amendment and revocation of the Trusts was not exclusive because neither of the Trusts expressly stated the method was exclusive. Thus, because the Fifth Codicil disposed of property governed by the terms of the Trusts, the Fifth Codicil was effective to amend the Trusts pursuant to § 35-15-602(c)(2)(A). Alternatively, if the method was exclusive, Ms. Khoury contends the Fifth Codicil substantially complied with the method because the Fifth Codicil was a written instrument signed by Mr. Hunter, who was both the Grantor and Trustee.

---

[4] On February 2, 2019, after Ms. Khoury filed her appeal in this case, Ms. Surber filed a petition to remove the Co-Executors as the personal representatives of the estate and as co-trustees of the Trusts. In response, the Co-Executors resigned as co-executors and as co-trustees, and the court entered an order on April 24, 2019, appointing Pendleton Square Trust Company, LLC as Successor Administrator C.T.A. of the Estate. The court also appointed Pendleton Square Trust and attorney Michelle Poss as Successor Co-Trustees of the Trusts. Pendleton Square Trust takes no position on the merits of the issues in this appeal.

[5] Mr. Hunter created the Hunter Trust on September 22, 2006. By quitclaim deed dated February 7, 2007, he conveyed all of his interest in the Mercedes Property to the Trust. Mr. Hunter subsequently amended the Hunter Trust on October 21, 2014, August 5, 2016, and November 23, 2016. In the second amendment, Mr. Hunter specified that following his death, the property was to be sold by the Trustee and the proceeds divided equally between J.H.H. and Ms. Khoury.

[6] Mr. Hunter established the Cargile Trust on August 5, 2016. The Trust identifies J.H.H. as the Beneficiary and provides that J.H.H. may occupy, enjoy and use the Cargile residence until he attains the age of 30, at which time the trustee is to transfer the property outright to J.H.H. The Cargile Property was conveyed to the Cargile Trust by quitclaim deed dated September 7, 2016.

The issue presents a question of law, which we review pursuant to the de novo standard without a presumption of correctness. *Harvey ex rel. Gladden v. Cumberland Tr. and Inv. Co.*, 532 S.W.3d 243, 252 (Tenn. 2017). To the extent the issue also involves the interpretation of a statute, this too is a question of law, which we review de novo with no presumption of correctness. *Pickard v. Tenn. Water Quality Control Bd.*, 424 S.W.3d 511, 518 (Tenn. 2013).

We interpret a trust using the same rules of construction for interpreting a will. Tenn. Code. Ann. § 35-15-112. "[T]he intention of the [grantor] must be ascertained, if at all possible, from the particular words used in the [trust] and from the context, general scope, and purpose of the instrument." *In re Estate of McFarland*, 167 S.W.3d 299, 302 (Tenn. 2005).

The Tennessee Uniform Trust Code ("TUTC") treats a revocable trust "as the functional equivalent of a will." Tenn. Code Ann. § 35-15-601 cmt. Like the testator of a will, a grantor of a revocable trust may amend or revoke the trust at any time during his or her life. Tenn. Code Ann. § 35-15-602(a). In this regard, the TUTC provides:

> (c) **The settlor may revoke or amend a revocable trust**:
>
> > **(1) By substantial compliance with a method provided in the terms of the trust**; or
> >
> > (2) If the terms of the trust do not provide a method or the method provided in the terms is not expressly made exclusive, by:
> >
> > > (A)    A later will or codicil that expressly refers to the trust or specifically devises property that would otherwise have passed according to the terms of the trust; or
> > >
> > > (B)    Any other method manifesting clear and convincing evidence of the settlor's intent.

*Id.* § 602(c) (emphasis added).

Each of the Trusts specifies the same method for revocation and amendment. Article I, paragraph 1.6 of the Cargile Trust and Article III of the Hunter Trust each state:

> This Trust Agreement shall be fully revocable during my lifetime. I hereby retain the right to alter, amend, revoke, or terminate the Trust, or any of the terms of this Trust Agreement, in whole or in part. This right of amendment or revocation shall be personal to me and shall not be exercisable by anyone acting on my behalf as my attorney-in-fact, guardian, conservator,

or other fiduciary. Any amendment to this Trust **shall** be made by written instrument signed by both me, as Grantor, and the Trustee, and any revocation of this Trust **shall** be made by me in writing to the Trustee. In the event of revocation, the Trustee shall have a reasonable time to close the books and accounts of the Trust and to deliver the assets then held in the Trust to me or my designee(s). Upon my death, this Trust shall become irrevocable.

(Emphasis added). Additionally, Article IX of the Cargile Trust states:

I retain the power to revoke or amend this Agreement during the period prior to my death. Such power shall be exercisable by me only by a writing delivered to the Trustee or by a writing to be delivered to the Trustee upon my death. Upon my death, all trusts created herein shall be irrevocable.

As noted earlier, months prior to the execution of the Fifth Codicil to his will, Mr. Hunter amended the Hunter Trust three times, and each amendment was in compliance with the method specified in the Trusts. For example, the First Amendment to the Hunter Trust states:

Pursuant to the powers reserved to me, the undersigned, as the trustee of the [Hunter] Trust dated September 22, 2006 ("Trust"), between James Ronald Hunter as Grantor and James Ronald Hunter, as Trustee, I hereby amend the Trust on this the 21st day of October, 2014 in the following respect ("First Amendment") . . . .

Additionally, Mr. Hunter signed each amendment to the Hunter Trust in his capacity as the Trustee. For example, the First Amendment to the Hunt er Trust was signed as follows:

IN WITNESS WHEREOF, James Ronald Hunter has executed this First Amendment as the trustee of the Trust in Nashville, Davidson County, Tennessee, this 21st day of October, 2014.

TRUSTEE:

JAMES RONALD HUNTER

In contrast to the form and substance of the amendments to the Hunter Trust, the Fifth Codicil states that Mr. Hunter is amending his will, not a trust, and Mr. Hunter did not sign it in his capacity as the Trustee. In pertinent part, the Fifth Codicil reads:

*I hereby amend my Will by deleting the following paragraph of Article II, Section 3(c)—Distribution of Certain Real Property therein:*

3. <u>Distribution of Certain Real Property</u>.

(c)     I specifically devise and bequeath to my son, [J.H.H.], the real property located at 201 Cargile Lane, Nashville, Tennessee 37219. Such bequest shall be placed into the [J.H.H.] Cargile Trust.

**I hereby amend my Will by substituting the following paragraph to replace the above deleted paragraph**:

3. <u>Distribution of Certain Real Property</u>.

(c)     I specifically devise and bequeath to my friend, Nuhad Khoury, the real property located at 201 Cargile Lane, Nashville, Tennessee 37205.

**I hereby amend my Will by adding the following paragraphs to Section 3 of Article II**:

3. <u>Distribution of Certain Real Property</u>

.     .     .

(g)     I specifically devise and bequeath to my friend, Nuhad Khoury, the real property located at 2520 Mercedes Drive, Fort Lauderdale, Florida 33316.

.     .     .

IN WITNESS WHEREOF, I have set my hand to this Codicil, consisting of a total of four (4) printed pages, and for the purpose of identification, I have signed or initialed each page, on this 5th day of January, 2017, at Nashville, Tennessee, all in the presence of each and all of the subscribing witnesses, whom I have requested to act as such by signing the attestation clause set forth herein below.

_____
JAMES RONALD HUNTER

(Emphasis in original).

- 8 -

The language in both the Hunter Trust and the Cargill Trust is unambiguous: "Any amendment to this Trust **shall** be made by written instrument signed by both me, as Grantor, and the Trustee, and any revocation of this Trust **shall** be made by me in writing to the Trustee." (Emphasis added). "When 'shall' is used . . . it is ordinarily construed as being mandatory and not discretionary." *Stubbs v. State*, 393 S.W.2d 150, 154 (Tenn. 1965); *see Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 308 (Tenn. 2012). Thus, by including the word "shall," Mr. Hunter unequivocally expressed his intent that the specified method be the exclusive method to revoke or amend the Trusts.

Because we have determined, as the trial court did, that the specified method is the exclusive method, then the alternative methods to amend or revoke a trust instrument referenced in § 602(c)(2) are unavailable.[7] Consequently, we must determine whether the Fifth Codicil is in "substantial compliance" with the exclusive method in the Trusts. *See* Tenn. Code Ann. § 35-15-602(c) ("The settlor may revoke or amend a revocable trust: (1) By substantial compliance with [the exclusive] method provided in the terms of the trust[.]").

While the Fifth Codicil is a written instrument, Mr. Hunter did not sign it in the manner clearly and unambiguously set forth in the Trusts. Each of the Trusts requires that the written instrument **shall** be "signed by both [Mr. Hunter], as Grantor, and the Trustee," but the Fifth Codicil does not identify Mr. Hunter in his capacity as the Grantor or the Trustee. Conversely, on each of the three occasions Mr. Hunter amended the Hunter Trust, he signed each amendment "as the trustee of the Trust":

---

[7] Tenn. Code Ann. § 35-15-602(c)(2) reads:

    (2) If the terms of the trust do not provide a method **or the method provided in the terms is not expressly made exclusive**, by:

        (A) A later will or codicil that expressly refers to the trust or specifically devises property that would otherwise have passed according to the terms of the trust; or

        (B) Any other method manifesting clear and convincing evidence of the settlor's intent.

(emphasis added)

IN WITNESS WHEREOF, James Ronald Hunter has executed this First Amendment as the trustee of the Trust in Nashville, Davidson County, Tennessee, this 21st day of October , 2014.

TRUSTEE:

JAMES RONALD HUNTER

In contrast, as the signature provision in the Fifth Codicil reveals, Mr. Hunter did not sign the document as the Trustee; he is only identified as James Ronald Hunter:

JAMES RONALD HUNTER

Although only "substantial compliance" with the exclusive method is required, *see* Tenn. Code Ann. § 35-15-602(c)(1), the Fifth Codicil deviates from the exclusive method and is deficient in many ways. First, it does not refer to either of the Trusts or, for that matter, to any trust. Second, Mr. Hunter did not sign the written instrument as the Grantor or the Trustee as the Trusts expressly mandate ("Any amendment to this Trust shall be made by written instrument signed by both me, as Grantor, and the Trustee."). Third, the Fifth Codicil expressly states Mr. Hunter's intent to "amend my Will," not a trust.[8] Finally, Mr. Hunter executed four prior codicils to his will, and he never attempted to amend any of the terms of the Trusts by means of a codicil. Based on these deficiencies, we conclude that the Fifth Codicil does not substantially comply with the exclusive method specified in the Trusts.

As the guardian ad litem for J.H.H. correctly states in the appellee's brief, a later codicil is not a permitted means of amending or revoking a trust if the terms of the trust provide a method that is exclusive. *See* Tenn. Code Ann. § 35-15-602(b)(2). In this case, the Trusts specified an exclusive method, and the Fifth Codicil does not substantially comply with that method. Therefore, the Fifth Codicil did not amend or revoke the Trusts.

Nevertheless, and alternatively, Ms. Khoury contends that the Fifth Codicil reveals Mr. Hunter's intent to revoke or amend the Trusts. In this regard she relies on the comment to Tenn. Code Ann. § 35-15-602(c), which states, "[S]ubsection (c) generally

---

[8] Mr. Hunter's expressed intent to "amend my Will" was stated three times in the Fifth Codicil.

- 10 -

honors a settlor's clear expression of intent even if inconsistent with stated formalities in the terms of the trust," and the following provision in the Fifth Codicil:

> 4. <u>Distribution of Remaining Real Property</u>.
>
> I intend that any real estate that I own at my death, to be administered as personal property by my Executor. In addition, if there shall be any conflict or inconsistency between this the Fifth Codicil to my Last Will and Testament and any other testamentary or trust instrument, any such inconsistency shall be resolved by giving priority to this Fifth Codicil executed the date first mentioned.

Indeed, Mr. Hunter expressed the intent in the first sentence of paragraph 4 that "any real estate that I own at my death [is] to be administered as personal property by my Executor." However, Mr. Hunter did not own either of the properties at his death. On the contrary, the Hunter Trust owned the Mercedes Property, and the Cargile Trust owned the Cargile Property. Thus, it does not matter, as the second sentence would provide, whether there is any "conflict or inconsistency" between the Fifth Codicil and either of the Trusts because the Fifth Codicil only pertains to property Mr. Hunter owned at the time of his death.[9]

There is yet another basis upon which to conclude that the Fifth Codicil to Mr. Hunter's will did not effectively amend or revoke the Trusts: the Trusts became irrevocable at the time of Mr. Hunter's death, and the Fifth Codicil had no legal effect prior to his death. "A will or codicil has no legal effect until it has been admitted to probate." *In re Estate of Boote*, 198 S.W.3d 699, 711 (Tenn. Ct. App. 2005) (footnote omitted) (citations omitted). Thus, we construe wills as speaking "at the time of the testator's death." *Estate of Robison v. Carter*, 701 S.W.2d 218, 222 (Tenn. Ct. App. 1985) (citing *Merchants & Planters Bank v. Myers*, 644 S.W.2d 683, 686 (Tenn. Ct. App. 1982)). Furthermore, a "Court must 'read [the] will as if it had been executed immediately prior to the Testator's death' and presume that the Testator was 'acquainted with applicable rules of law when executing [the] will.'" *In re Estate of Snapp*, 233 S.W.3d 288, 292 (Tenn. Ct. App. 2007) (quoting *In re Estate of McFarland*, 167 S.W.3d at 303).

---

[9] To be subject to the administration of a decedent's probate estate or the provisions of a will, the asset that is the subject of a bequest or devise must have been "owned by the decedent at the time of her death." *In re Estate of Nichols*, 856 S.W.2d 397, 400 (Tenn. 1993)*; see also Lowry v. Lowry*, 541 S.W.2d 128, 131 (Tenn. 1976) ("[O]nly that property owned at death passed by will."); *Horadam v. Stewart*, No. M2007-00046-COA-R3-CV, 2008 WL 4491744, at *10 (Tenn. Ct. App. Oct. 6, 2008) ("It is well-settled that a will conveys only what the decedent owned at the time of death[.]").

Admittedly, the Fifth Codicil was in writing and was signed by Mr. Hunter (albeit not as required); nevertheless, the "intent" expressed by Mr. Hunter in the Fifth Codicil was to "amend my Will," not a trust. As noted immediately above, we must presume that Mr. Hunter was acquainted with the rule of law that a will does not speak and has no legal effect until it has been admitted to probate. Thus, because Mr. Hunter repeatedly expressed his intent to amend his will, the Fifth Codicil did not speak and had no legal effect until the Trusts became irrevocable. Thus, the Fifth Codicil did not revoke or amend the Trusts.

For the reasons stated above, the Fifth Codicil did not amend or revoke the Cargile Trust or the Hunter Trust. As a consequence, the Cargile Property remained the property of the Cargile Trust and was subject to administration under the terms of the Cargile Trust, and the Mercedes Property remained the property of the Hunter Trust and was subject to administration under the terms of the Hunter Trust.

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the appellant, Nuhad Khoury.

_____
FRANK G. CLEMENT JR., P.J., M.S.