Mary W. **FURCHTGOTT** and Margaret W. **Wilkerson Edwards, Appellants,**

v.

**Lindsay YOUNG and Carrie Moore, Appellees.**

Supreme Court of Tennessee.

Nov. 20, 1972.

Bernard E. Bernstein, Bernstein, Dougherty & Susano, Knoxville, for appellants.

Leroy Phillips, Jr., Ben E. Caldwell, Chattanooga, for appellees.

## OPINION

JOHN W. WILSON, Special Justice.

For convenience, the parties will be designated as in the trial court; that is, Mary W. Furchtgott and Margaret W. Wilkerson Edwards, as complainants, against Lindsay Young and Carrie Moore, as defendants.

This action was brought in the Chancery Court of Knox County by the complainants, asking the court to construe the last will and testament of Nettie W. Wilburn, with particular reference to the testamentary trust created for Carrie Howard therein and to declare who was the owner of the funds remaining in the trust upon the death of the beneficiary Carrie Howard.

The will was executed on November 18, 1961 and Mrs. Wilburn died June 16, 1963. The will was admitted to probate in the County Court of Knox County and final settlement of the executor was approved.

The complainants are the nieces of the deceased Mrs. Wilburn, who were her closest relatives and the primary beneficiaries under her will. The two nieces are also named as residuary beneficiaries under Paragraphs IV and V of the Will, and copied as follows:

"IV. All of the remainder of my estate, if any there is remaining, I give, devise and bequeath to my said nieces, Mary W. Furchtgott and Margaret W. Wilkerson, to be divided between them equally, share and share alike.

V. In the event either or both of my said nieces, Mary W. Furchtgott and Margaret W. Wilkerson, should predecease me, the portion of my estate and all special bequests that would have passed to her or them, shall go to her or their children, as the case may be, equally, share and share alike."

In Paragraph II of the Will, along with other bequests, is found the provision which gives rise to this controversy, and is quoted, as follows:

". . . to Lindsay Young in Trust, for my faithful maid, Carrie Howard, the sum of $10,000.00, to be paid to her at the rate of $50.00 per month, with the discretion in the said Trustee to pay over to or apply for the benefit of said Carrie Howard so much of the principal of this bequest as he in his sole discretion deems needful or desirable for her support or maintenance and for medical, surgical, hospital or other institutional care . . ."

Carrie Howard, the beneficiary, died in October, 1969, in Chattanooga. The Trustee, Lindsay Young, filed an answer on May 20, 1970, saying the balance in the trust fund was the sum of $6,986.84 and that he had always been, and is now, willing to pay the funds to such person or persons lawfully entitled thereto.

Carrie Moore, claiming to be the daughter of Carrie Howard, called upon the Trustee, Lindsay Young, to pay the money remaining in the trust to her. The two nieces made claim to the funds remaining in the trust under the terms of the residuary clause and, as hereinbefore stated, this suit was filed. The Chancellor found that there were no indications in the Will or from circumstances surrounding the execution of the Will, that the deceased Nettie Wilburn intended to provide Carrie Howard with any transmissible estate which would pass to her heirs at law upon her death if any sums should remain in the trust, and the decree, among other things, states:

"1. That the Trust created in the Last Will and Testament of Nettie W. Wilburn for Carrie Howard was a limited Trust to provide monthly income of Fifty ($50.00) Dollars per month for the said Carrie Howard as well as such additional sums as the Trustee might deem appropriate under the terms of the will and that the Trust terminated upon the death of the said Carrie Howard.

2. That upon the death of the said Carrie Howard any funds remaining in the hands of the Trustee would pass under the residuary clause of the said will to the complainants herein."

The defendant Carrie Moore prayed and was granted an appeal to the Court of Appeals for the Eastern Division of the State of Tennessee.

The Court of Appeals, with one member of the Court dissenting, reversed the Chancellor, holding the evidence preponderated against the findings and adjudication of the Chancellor.

We granted certiorari and have heard arguments.

Errors are assigned as follows:

"1. The Court of Appeals erred in holding that the unused portion of the Trust fund would pass to the Estate of Carrie Howard and not to the petitioners herein under the residuary clause of the Will.

2. The Court erred in adjudging costs of the cause against the parties bringing the Estate to the Court for adjudication rather than adjudging costs against the fund held by the trustee."

The only witnesses heard before the Chancellor were Mr. Lindsay Young, the Trustee, and the complainants Mrs. Mary W. Furchtgott and Margaret W. Wilkerson Edwards (Mrs. Edwards being the same party mentioned as Margaret W. Wilkerson in the Will). There was no proof by the defendant Carrie Moore.

The Will was prepared by Mr. Lindsay Young, member of the Knoxville Bar, at the request of Mrs. Wilburn, whom he had known for about ten years. Mrs. Furchtgott and her sister, Mrs. Edwards, began living with their aunt, Mrs. Wilburn, upon the death of their mother, at which time Mrs. Furchtgott was three years of age and Mrs. Edwards approximately two weeks old. The nieces lived in the home and were cared for by their aunt until they were married and established their own homes, and the relationship after establishing their own homes was very close with their aunt. Carrie Howard, beneficiary of the trust, was a domestic servant in the home for many years, and as found by the Chancellor, obviously elderly. She did not live in the Wilburn home when her employment started but after being divorced from her husband, she lived in the Wilburn home and, for a very short time, lived in the Wilburn home after the death of Mrs. Wilburn. Mrs. Wilburn was devoted to Carrie Howard. There is nothing in the record to indicate who are the next of kin of Mrs. Howard or that the testatrix knew of any next of kin. It is known from the pleadings that the defendant Carrie Moore claims to be the daughter of Carrie Howard.

In disposing of the question presented, the legal effect of the words used in the Trust provision should be considered. The words used in providing the Trust clearly puts the legal title to the $10,000.00 in the Trustee, and he had no right to dispose of it other than as directed. The cestui que, Carrie Howard, was given no right, either legal or equitable, which she could assert against the title of the Trustee so long as the Trustee faithfully administered the Trust as directed, and the Trustee faithfully did that.

Now, the Trust has been terminated by the death of the beneficiary. The Trustee has shown by his answer that he had in his possession the sum of $6,986.84, on May 20, 1970. Now, what must the Trustee do with the money? It is certain he can't keep it. Does he return it to the residuary beneficiary under the Will of the deceased? Or does he give it, in a lump sum, to the next of kin of the beneficiary? What was the intention of the testatrix?

In determining the question before us, attention is directed to the following cases:

"The cardinal rule in the construction of wills is to ascertain the intention of the testator. To that end the court will place itself as nearly as possible in the position of the testator . . . and will look to the will as a whole and not to fragments considered out of context with the whole will." Webb v. Webb, 53 Tenn.App. 609, 385 S.W.2d 295, at 296 & 297 (1964).

It is equally settled that in a construction of an ambiguous provision, that should be adopted if reasonable which will sustain and carry out, rather than defeat, the intention of the maker. Tramell v. Tramell, 162 Tenn. 1, 32 S.W.2d 1025 (1931).

"The intention of the testator must be gathered from the whole instrument, and whatever appears to be the dominant and controlling intent must govern, even if in conflict with some words, phrases, and expressions which, taken alone and separately, might lead to a different conclusion or interpretation. The arbitrary and technical meaning of the words must yield to the lawful intention of the testator, when ascertained." East and Collins v. Burns, 104 Tenn. 169, 56 S.W. 830 (1900).

"In the absence of an expressed intention to the contrary, favor will be accorded to those beneficiaries who appear to be the natural and special objects of the testator's bounty. Again, a construction will be favored which conforms most nearly to the general laws of inheritance and which will prefer those of the blood of the testator to strangers or to persons not so closely related to the testator."

Davis v. Mitchell, 27 Tenn.App. 182, 178 S.W.2d 889, at 913 (1944).

It appears that Mrs. Wilburn had taken her two nieces into her home at a very tender age and the relationship thereafter, until they married, was more that of mother and daughter. The Will itself discloses that the nieces were the prime object of her affection, by direct bequest as well as residuary beneficiaries of her estate.

It is also by the Trust provision disclosed that she was devoted to Carrie Howard, and wanted her cared for. The testatrix then placed $10,000.00 in the hands of her trusted adviser, as Trustee, and directed as to how he should use it for the benefit of Carrie Howard.

At the time she did this, she knew that Carrie Howard was elderly but she had no way of knowing how long she would live or what her needs would be during such time as she did live. She could not have known what "medical, surgical, hospital or other institutional care" Carrie Howard might need. It is clear that she was willing that $10,000.00 of her estate be used for the purpose stated in the trust provision, if needed. The intent to provide for the faithful servant, so long as she might live, was obvious, and with all the unknown factors existing, as mentioned above, it is only reasonable to assume that Mrs. Wilburn intended to be liberal in making available sufficient funds to make reasonably certain her intentions to have Carrie Howard provided for.

The rules of construction followed by the Court of Appeals in the majority opinion are cases having such a different fact pattern as to be of no help in the case at bar.

The Court of Appeals, in part, rests its finding on a general principle of law quoted from 57 Am.Jur. § 796, quoted on page 4 of the opinion. However, it overlooked the exception to the general rules. Quoted below is § 796, with the portion omitted by the Court of Appeals emphasized:

"It is a well-established general rule that a gift of the income or interest of a fund without limitation as to time is, where no other distribution is made thereof, a gift of the principal. The reason is that where one has an unlimited right to the income there is no room for a right of property in anyone else. *The rule is applicable although the gift may be to the separate use or through the medium of a trust. The rule, however, is not one of law but of construction, and hence does not apply where a contrary intention is inferable, and in all such cases the court is obliged to find out the meaning from the context.*"

From an examination of the whole Will and all the facts and circumstances surrounding the testatrix at the time of making the Will, we are of the opinion that she did not intend to give the heirs at law of Carrie Howard any interest in the trust fund so as to entitle them to the balance remaining in the hands of the Trus-

tee. On the other hand, we hold that she intended that any balance remaining in the hands of the Trustee, upon termination of the trust by reason of the death of Carrie Howard, should pass to Mary W. Furchtgott and Margaret W. Wilkerson Edwards under the residuary clause of the Will. To hold otherwise would have the effect of saying the testatrix gave greater right to persons unknown than to the beneficiary of the trust.

The judgment of the Court of Appeals is reversed and the decree of the Chancellor affirmed.

■ We are of the opinion that the second assignment of error should be sustained and the costs and attorney's fees awarded should be paid out of the Trust.

DYER, C. J., and CHATTIN, HUMPHREYS and McCANLESS, JJ., concur.