# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
### May 3, 2005 Session

## IN RE ESTATE OF MERLE JEFFERS McFARLAND

**Appeal by permission from the Court of Appeals, Eastern Section**
**Chancery Court for Hawkins County**
**No. 3554      Hon. Thomas R. Frierson, II, Chancellor**

---

**No. E2003-01833-SC-R9-CV  - Filed July 7, 2005**

---

We granted review in this case to determine the appropriate manner of distributing lapsed residuary gifts in a will. Specifically, we are confronted with a holographic will containing a residuary clause which devised percentages of the testatrix's estate to certain named beneficiaries. Three of these beneficiaries predeceased the testatrix, causing their gifts to lapse. Because these beneficiaries also died without issue, the Tennessee anti-lapse statute is not applicable.[1] Thus, the question presented is whether the lapsed residuary gifts are to be divided among the remaining residuary beneficiaries or pass through intestate succession to the testatrix's heirs at law. The probate court concluded that the lapsed gifts created a partial intestacy, and the lapsed gifts passed to the heirs at law. The Court of Appeals affirmed. Upon review, we affirm the judgment of the Court of Appeals.

**Tenn. Rule App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Affirmed.**

WILLIAM M. BARKER, J., delivered the opinion of the court, in which E. RILEY ANDERSON, and ADOLPHO A. BIRCH, Jr., JJ., joined. FRANK F. DROWOTA, III, C.J., filed a dissenting opinion in which JANICE M. HOLDER, J., joined.

Charles R. Terry, Morristown, Tennessee, Douglas T. Jenkins, Rogersville, Tennessee, and William Lewis Jenkins, Jr., Dyersburg, Tennessee, for the appellant, Stephen D. McFarland, Administrator C.T.A. of the Estate of Merle Jeffers McFarland.

Gene Paul Gaby, Greeneville, Tennessee, for the appellee, James Cox.

James Robert Walker, Knoxville, Tennessee, for the appellee, The University of Tennessee.

Patrick Ledford, Kingsport, Tennessee, for Amicus Curiae, Elizabeth Walker, Administratrix C.T.A. of the Estate of Charles Dow Chase.

---

[1] See Tenn. Code Ann. § 32-3-105 (2001).

Daniel B. Minor, Kingsport, Tennessee, for Amicus Curiae, Jackie Terry Olinger.

**OPINION**

**<u>Facts</u>**

On November 14, 1994, Ms. Merle Jeffers McFarland executed a holographic will. In this will, Ms. McFarland named an administrator for her estate, gave directions regarding her burial, set aside two percent of her estate to provide funds for funeral expenses, and also devised a specific bequest of three thousand dollars to the Tieke-McCullough Cemetery bank fund. The will further directed that the remainder of her estate was to be divided among eighteen named individuals and entities.

Specifically, Ms. McFarland provided in her will that "[t]he rest of the estate I wish to be divided to the following." She then listed the following beneficiaries along with the percentages of her estate devised to each. Her two brothers, Willie Lee Jeffers and Minnis Rankin Jeffers, were each to receive a ten percent share of the residuary estate. Clarence Lee McFarland, Mary Louise McFarland, and Evelyn B. McFarland McCulley were each also devised a ten percent share. Another ten percent share was to be divided equally between the three sons of Clyde E. McFarland. The First United Methodist Church of Bulls Gap received a five percent share. Larry and Virginia Carpenter were to divide a five percent share. A two percent share was devised to the city of Bulls Gap. Another two percent share went to the Tieke-McCullough Cemetery for "mowing and up keep of the cemetery." The Thompson Cancer Center in Knoxville was devised a ten percent share to be used for research, and the University of Tennessee was also to receive ten percent "for scholarships or what they need most." Ms. McFarland granted one percent shares to the Bulls Gap Masonic Lodge and Eastern Star Lodge. Finally, the United Way Fund or any other "worthy charity fund" was devised a two percent share.

On October 12, 2001, seven years after making the will, Ms. McFarland passed away at the age of eighty-four. An administrator was appointed by the trial court, and the will was admitted to probate. However, the administrator subsequently filed a declaratory judgment action seeking the court's guidance as to how the proceeds of the estate were to be distributed. This action was necessitated due to the fact that three of the residuary beneficiaries named in the will, Minnis Rankin Jeffers, Willie Lee Jeffers, and Mary Louise McFarland, had predeceased the testatrix, Ms. McFarland. Also, none of these predeceased beneficiaries had left a surviving spouse or issue. It was therefore uncertain as to how these individuals' shares were to be distributed.

The chancery court, exercising probate jurisdiction, determined that the gifts to each of the three predeceasing beneficiaries had lapsed. Because each had died without leaving surviving issue, Tennessee's anti-lapse statute, Tennessee Code Annotated section 32-3-105 (2001), did not apply.

The probate court concluded that these circumstances resulted in a partial intestacy in Ms. Farland's estate. The chancellor also acknowledged that the long-standing common law rule, as announced in Ford v. Ford, 31 Tenn. 431 (1852), was that lapsed residuary gifts do not remain as part of the residue of the will to be distributed to remaining beneficiaries, but instead pass by intestate succession to the testator's next of kin. Therefore, the chancellor directed that those shares of the estate devised to the predeceased beneficiaries were to be distributed to Ms. McFarland's heirs at law, rather than being divided among the remaining residuary beneficiaries.

The estate administrator filed an interlocutory appeal in the Court of Appeals, where the decision of the probate court was subsequently affirmed. We then granted review. The issue presented is whether the lapsed residuary gifts pass to the testatrix's heirs at law or to the remaining residuary beneficiaries. The estate administrator, along with the remaining residuary beneficiaries, argue that the lapsed gifts should be divided among the remaining residuary beneficiaries in proportion to their interests granted in the will. In opposition, the surviving heirs argue that the lapsed gifts pass by intestate succession.

## Standard of Review

When this Court is called upon to construe a will, and there is no dispute in the evidence as to any material fact, then the question on appeal is one of law. In re Estate of Vincent, 98 S.W.3d 146, 148 (Tenn. 2003). Accordingly, our review is de novo with no presumption of correctness accompanying the lower courts' conclusions of law. Id. (citation omitted).

## Analysis

### I. Principles of Will Construction

In construing a will, the cardinal rule is that the Court must attempt to ascertain the intent of the testator and to give effect to that intent unless prohibited by a rule of law or public policy. Id. at 150; see Winningham v. Winningham, 966 S.W.2d 48, 50 (Tenn. 1998). Holographic wills drawn by unskilled drafters are given a liberal construction. See Garner v. Becton, 212 S.W.2d 890, 891 (Tenn. 1948). Nevertheless, the intention of the testator must be ascertained, if at all possible, from the particular words used in the will and from the context, general scope, and purpose of the instrument. Daugherty v. Daugherty, 784 S.W.2d 650, 653 (Tenn. 1990). The Court "cannot determine the devolution of estates based upon the mere surmise as to the testator's intention." Pinkerton v. Turman, 268 S.W.2d 347, 350 (Tenn. 1954).

The administrator of the estate argues that Ms. McFarland's will manifested a clear preference for those specified beneficiaries rather than for the heirs at law. He argues that Ms. McFarland clearly intended the residuary beneficiaries to receive the remainder of her estate, in its entirety, and to the exclusion of all other persons, including her heirs. The administrator also

correctly notes that when a person makes a will there is a presumption that the person did not intend to die intestate as to any part of his or her property. See Tenn. Code Ann. § 32-3-101 (2001); In re Walker, 849 S.W.2d 766, 768 (Tenn. 1993).

On the other hand, the law requires us to read a will as if it had been executed immediately prior to the testator's death. Tenn. Code Ann. § 32-3-101 (2001); see also Bell v. Shannon, 367 S.W.2d 761, 766 (Tenn. 1963). Furthermore, a person is presumed to be acquainted with applicable rules of law when executing a will. McCarley v. McCarley, 360 S.W.2d 27, 29 (Tenn. 1962). We must presume, therefore, that Ms. McFarland, prior to her death, knew that several of the beneficiaries had predeceased her, and we can further presume that she knew these lapsed gifts would pass by intestate succession to her heirs. Also, there is no evidence in the record that she attempted to redraft or revise her will to provide for an alternative distribution of the lapsed gifts.

Faced with a lack of any clear evidence concerning the testatrix's intent on this point, we are left to apply the general rules governing residuary clauses and lapsed gifts.

## II. General Rules of Property Descent and Distribution

A gift or devise in a will which fails because the beneficiary predeceases the testator is said to lapse. White v. Kane, 159 S.W.2d 92, 94 (Tenn. 1942). To avoid this problem, Tennessee, like many other states, has enacted an "anti-lapse" statute which works to save lapsed gifts for the representatives of the predeceased beneficiary. Id. The Tennessee anti-lapse statute provides, in part:

> (a) Whenever the devisee or legatee or any member of a class to which an immediate devise or bequest is made, dies before the testator, or is dead at the making of the will, *leaving issue which survives the testator*, the issue shall take the estate or interest devised or bequeathed which the devisee or legatee or the member of the class, as the case may be, would have taken, had that person survived the testator, unless a different disposition thereof is made or required by the will.

Tenn. Code Ann. § 32-3-105 (2001) (emphasis added).

This statute attempts to further the presumed intent of the testator in the absence of any contrary intent expressed through the will. Weiss v. Broadway Nat'l Bank, 322 S.W.2d 427, 432 (Tenn. 1959). However, the anti-lapse statute saves the gift only if the predeceased beneficiary has left issue [2] surviving the testator; otherwise, the statute has no application, and the gift lapses. See Cox v. Sullins, 183 S.W.2d 865, 866 (Tenn. 1944).

---

[2] The word "issue" has been interpreted as meaning only direct descendants of the beneficiary. White, 159 S.W.2d at 95.

Another manner of disposing of lapsed gifts is through a will's residuary clause. If the will contains specific gifts or devises of property which lapse, these are deemed to fall into the residue and are disposed of through the provisions of the residuary clause, unless the testator has manifested a contrary intention. Milligan v. Greeneville Coll., 2 S.W.2d 90, 93 (Tenn. 1928). Yet a particular problem arises when, as in the present case, the anti-lapse statute is inapplicable, and the gift which has lapsed is already a part of the residue. Under such circumstances, the traditional rule, derived from the English common law, is that the lapsed gift falls out of the terms of the will and passes by intestate succession to the testator's heirs at law. See, e.g., Corbett v. Skaggs, 207 P. 819, 820 (Kan. 1922); In re Frolich Estate, 295 A.2d 448, 450 (N.H. 1972). This rule has, in fact, been the law in Tennessee for the past 153 years, having been adopted in Ford v. Ford, 31 Tenn. 431 (1852). This Court held in Ford that when "a bequest to several be of the residue, and it fail as to part by reason of lapse, partial revocation, or other cause before stated, such part cannot fall into the remaining residue, but will be undisposed of and go to the next of kin." Id. at 435.

Despite its stability in our state, this rule has been much criticized in other jurisdictions and by legal commentators, with the main argument being that the rule defeats the most probable intent of the testator in this situation.[3] Due in part to this criticism, the Uniform Probate Code adopts an alternative rule, often called the "modern" rule, which directs that "if the residue is devised to two or more persons and the share of one of the residuary devisees fails for any reason, his share passes to the other residuary devisee, or to other residuary devisees in proportion to their interests in the residue." Unif. Probate Code § 2-606 (1974).[4] The UPC rule has gained wide-spread support, having been adopted, either by statute or through case law, in the vast majority of other states.[5] By contrast, the common-law or Ford rule remains in effect in only a minority of states, including Tennessee.[6]

---

[3] See Corbett, 207 P. at 821-22; In re Frolich Estate, 295 A.2d at 451; In re Gray's Estate, 23 A. 205, 206 (Penn. 1892); In re Slack Trust, 220 A.2d 472, 473 (Vt. 1966); see also Edward C. Halbach, Jr., Stare Decisis and Rules of Construction in Wills and Trusts, 52 Cal. L. Rev. 921, 940 (1964); Patricia J. Roberts, Lapse Statutes: Recurring Construction Problems, 37 Emory L. J. 323, 368-71 (1988).

[4] This is also the rule espoused in the most current versions of American Jurisprudence and the Restatement of Property. See 80 Am. Jur.2d Wills § 1452 (2002); Restatement (Third) of Prop.: Wills & Other Donative Transfers § 5.5 cmt. o (1999).

[5] As of the date of this opinion thirty-seven states had adopted the UPC rule by statute. See, e.g., Ala. Code § 43-8-225(b) (1982); Ariz. Rev. Stat. § 14-2604 (2005); Colo. Rev. Stat. § 15-11-604 (2004); Fla. Stat. ch. 732.604(2) (2004); Haw. Rev. Stat. § 560: 2-604 (1996); Mich. Comp. Laws § 700.2604(2) (1998); Mont. Code Ann. § 72-2-614 (2003); 20 Pa. Cons. Stat. § 2514(11) (1999); Wash. Rev. Code § 11.12.120(2) (1999). Four states have adopted the UPC rule through case law. See, e.g., In re Frolich Estate, 295 A.2d at 452; In re Slack Trust, 220 A.2d at 474.

[6] In addition to Tennessee, seven other states and the District of Columbia continue to adhere to the traditional common-law or "English" rule. See Bronson v. Pinney, 33 A.2d 322, 326 (Conn. 1943); Starkey v. Dist. of Columbia, 377 A.2d 382, 383 (D.C. 1977); Matter of Estate of Kirkendall, 642 N.E.2d 548, 552 (Ind. Ct. App. 1994); Bankers Trust Co. v. Allen, 135 N.W.2d 607, 612 (Iowa 1965); Hopson v. Ratliff, 426 So. 2d 1377, 1380-81 (La. Ct. App. 1983); Byrd v. Wallis, 181 So. 727, 731 (Miss. 1938); In re Estate of Lewis Estate, 159 P. 961, 962 (Nev. 1916); Dean v. Moore,

(continued...)

Nevertheless, although widely abandoned in other jurisdictions, the <u>Ford</u> rule cannot fairly be termed either incorrect or illogical. The reasons supporting the modern UPC rule are generally that it more closely comports with the probable intent of the testator and that it avoids partial intestacy. <u>See</u> <u>In re Slack Trust</u>, 220 A.2d at 473-74; <u>Corbett</u>, 207 P. at 822. However, in our view, it is just as likely that a person would consider the implications of the traditional or <u>Ford</u> rule when executing his or her will and thus implicitly intend that lapsed gifts should pass to the heirs, rather than to the remaining residuary beneficiaries. Therefore, neither of the rules is more logically correct than the other. The two divergent rules simply represent two competing schools of thought as to what a testator would most probably desire to happen when a residuary gift lapses.

The <u>Ford</u> rule does not result in any obvious injustice or unfairness, and cannot be said to frustrate the intent of the testator. For instance, in the present case, the testratrix devised certain percentages of her residuary estate to eighteen specified parties, and three of these gifts subsequently lapsed. The will gives no indication of how the testatrix preferred these lapsed gifts to be distributed. However, application of the <u>Ford</u> rule results in the testatrix's stated intentions being carried out precisely as she directed with respect to fifteen of the eighteen beneficiaries. Further, the lapsed gifts pass to the most natural objects of her bounty – her heirs, which is a disposition favored under the law. <u>See</u> <u>Furchtgott v. Young</u>, 487 S.W.2d 301, 304 (Tenn. 1972) (holding that in the absence of an expressed intention to the contrary, "'a construction will be favored which conforms most nearly to the general laws of inheritance and which will prefer those of the blood of the testator to strangers or to persons not so closely related to the testator'") (quoting <u>Davis v. Mitchell</u> 178 S.W.2d 889, 913 (Tenn. Ct. App. 1944)). Conversely, application of the modern UPC rule would work to completely redraft the terms of the will, with none of the eighteen bequests being fulfilled exactly as directed by the testatrix.

Although we do not know how the testatrix would have preferred the lapsed gifts to be distributed, she clearly gave considerable thought to the specific percentages of her estate which she allotted to each beneficiary. To enlarge those percentages now, without any evidence that the testatrix intended such an outcome, would, in our opinion, totally frustrate her intentions as stated in the will. Faced with the choice between these two options, we conclude that the <u>Ford</u> rule secures the result which most closely comports with the testatrix's stated intentions and is the most just, natural, and reasonable disposition of the property. <u>See</u> <u>Davis</u>, 178 S.W.2d at 913 (stating that "such construction will be adopted if possible that will dispose of the property in a just, natural or reasonable manner").

### III. Principle of Stare Decisis

Further supporting retention of the common-law <u>Ford</u> rule is the principle that whenever a judicial decision, such as <u>Ford</u>, "has been submitted to and for some time, acted under, and is not manifestly repugnant to some rule of law of vital importance in the system, it should not lightly be

---

[6] (...continued)
380 P.2d 934, 937 (Okla. 1962).

departed from, nor for purposes which are not of the highest value to the community." <u>Hall v. Skidmore</u>, 171 S.W.2d 274, 276 (Tenn. 1943) (internal quotations omitted) overruled on other grounds by <u>Graves v. Sawyer</u>, 588 S.W.2d 542 (Tenn. 1979). In urging us to abandon the <u>Ford</u> rule, the appellants cite a general trend toward adoption of the more modern UPC rule, and also argue that the testatrix probably intended for her estate to be divided among the named residuary beneficiaries, to the exclusion of her heirs. Neither argument is sufficiently persuasive or compelling to support overriding a rule of law that has been in effect in this state for far more than a century. The doctrine of stare decisis is "one of commanding importance, giving, as it does, firmness and stability to principles of law." <u>J.T. Fargason Co. v.</u> Ball, 159 S.W. 221, 222 (Tenn. 1913). Stability in the law allows individuals to plan their affairs and to "safely judge of their legal rights." <u>Id.</u> Generally, well-settled rules of law will be overturned only when there is obvious error or unreasonableness in the precedent, changes in conditions which render the precedent obsolete, the likelihood that adherence to precedence would cause greater harm to the community than would disregarding stare decisis, or an inconsistency between precedent and a constitutional provision. None of these reasons are evident in the present case.

The power of this Court to overrule former decisions "is very sparingly exercised and only when the reason is compelling." <u>Edingbourgh v. Sears, Roebuck & Co.</u>, 337 S.W.2d 13, 14 (Tenn. 1960). Radical changes in the law are best made by the legislature. <u>J.T. Fargason Co.</u>, 159 S.W. at 222. In our view, if our General Assembly determines that the UPC or "modern" rule would better serve the public interest, then it is within its power to adopt it into law, as have many other states. For the time being, we see no compelling reason in the case now before us to overrule the long-standing precedent established in <u>Ford</u>. Therefore, we agree with the probate court and the Court of Appeals that the <u>Ford</u> rule governs this case, and the lapsed residuary gifts in Ms. McFarland's will pass to her heirs under the laws of intestate succession.

### Conclusion

In summary, we hold that the lapsed residuary gifts at issue in this case are not to be divided among the remaining residuary beneficiaries. Rather, the lapsed gifts result in a partial intestacy and therefore pass under the laws of intestate succession to the testatrix's heirs at law.

Costs of this appeal are taxed to the appellant, Stephen D. McFarland, administrator C.T.A. of the estate of Merle Jeffers McFarland, or his sureties, for which execution may issue if necessary.

_____
WILLIAM M. BARKER, JUSTICE