IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
February 22, 2023 Session

## JAMES WILLIAMS v. SMYRNA RESIDENTIAL, LLC ET AL.

**Appeal by Permission from the Court of Appeals**
**Circuit Court for Rutherford County**
No. 78245     Bonita Jo Atwood, Judge

———————————————————

**No. M2021-00927-SC-R11-CV**

———————————————————


HOLLY KIRBY, C.J., dissenting.


I agree with many of the points made in Justice Lee's dissenting opinion. I write separately out of concern about the practical implications of the majority's decision to leave the law so unsettled in an area that touches so many.

Whether or not one agrees with the holding in *Owens v. National Health Corporation*, 263 S.W.3d 876 (Tenn. 2007) (abrogated on other grounds by *Welch v. Oaktree Health & Rehab. Ctr., LLC*, 674 S.W.3d 881 (Tenn. 2023)), its holding was clear. Under *Owens*, an attorney-in-fact acting under a durable power of attorney for health care had authority to sign a nursing home admissions agreement that included an arbitration provision. This was premised on the Court's holding that the decision to admit a relative to a long-term care facility is a "health care decision" within the meaning of the Durable Power of Attorney for Health Care Act, and execution of the entire admissions agreement—including the arbitration agreement—was "necessary to 'consent . . . to health care.'" *See id.* at 884 (citing Tenn. Code Ann. §§ 34-6-201(3), 34-6-204(b)). As a result of *Owens*, it was well-settled that a health care power of attorney was needed—and sufficient—to complete all of the paperwork to obtain health care for a loved one.

"Was" well-settled. No more. The majority does not overrule *Owens* but instead distinguishes it based on the thinnest of reeds, its assertion that, in *Owens*, execution of the arbitration agreement presented with the facility admission documents was mandatory while the arbitration agreement in the instant case was not. Respectfully, whether the Court in Owens viewed the arbitration agreement as mandatory is unclear. The *Owens* Court

made no express finding that the arbitration agreement was mandatory. The admissions agreement did not contain any language conditioning admission to the defendant's facility on the arbitration agreement, and the arbitration agreement contained a separate signature block from the larger admissions agreement. *See id.* at 880–81. Likewise, there was no circumstantial evidence in *Owens* to suggest that the facility required consent to arbitration as a condition of the principal's admission. In fact, when asked by the plaintiff to consider whether the arbitration agreement was unenforceable on unconscionability grounds, the Court specifically noted the lack of evidence concerning "the circumstances under which Daniel signed the arbitration agreement on behalf of King, *including whether the arbitration agreement was offered on a 'take it or leave it basis.'*" *Id.* at 889 (emphasis added). It declined to address "whether the arbitration agreement [was] unconscionable due to the limited nature of the factual record." *Id.*

The majority goes to surprising lengths to show that the arbitration agreement in *Owens* really and truly was mandatory, even going so far as to plumb briefs filed by the parties *after* this Court's opinion was filed. This is beside the point if the *Owens* Court *itself* viewed the question as unclear.

This tees up the main point—the question of whether the arbitration agreement was mandatory had little to do with the *Owens* Court's reasoning on whether signing the arbitration agreement was a health care decision. The Court construed the durable power of attorney for health care in that case "in accordance with . . . the Tennessee Durable Power of Attorney for Health Care Act." *Id.* at 884. Applying the Act, *Owens* held that one acting pursuant to a durable power of attorney for health care may sign a nursing-home contract that includes an arbitration agreement. *Id.* The *Owens* Court reasoned that the arbitration agreement was part and parcel of the overall health care decision to admit the relative into a nursing home, one of the many sub-decisions made as part of the process. *Id.* at 884-85. On that basis, *Owens* plainly held that, under the Tennessee Durable Power of Attorney for Health Care Act, executing the arbitration agreement was a "health care decision."

In this case, the majority frames the question as "whether entering the arbitration agreement is a 'health care decision' within the meaning of the Durable Power of Attorney for Health Care Act." *Owens* held that the answer to that question is "yes." Despite this holding, citing its view that the arbitration agreement in *Owens* was "a condition of admission to the facility," the majority shunts *Owens* off to one side, characterizes the question on appeal in this case as "a matter of first impression," and proceeds with a textual analysis of the Durable Power of Attorney for Health Care Act that ignores the bulk of *Owens*'s reasoning.

This leaves practitioners and trial courts with two binding Tennessee Supreme Court decisions with analyses that cannot be reconciled or synthesized. In effect, the majority overrules *Owens* without engaging in this Court's traditional analysis for reconsidering its precedent. *See In re Estate of McFarland*, 167 S.W.3d 299, 306 (Tenn. 2005) ("Generally, well-settled rules of law will be overturned only when there is obvious error or unreasonableness in the precedent, changes in conditions which render the precedent obsolete, the likelihood that adherence to precedence would cause greater harm to the community than would disregarding stare decisis, or an inconsistency between precedent and a constitutional provision.").

The majority's decision also ignores other legal developments in this area. Between 2016 and 2019, the Centers for Medicare & Medicaid Services ("CMS") enacted new regulations for the use of arbitration agreements by long-term care facilities. *See* Revision of Requirements for Long-Term Care Facilities: Arbitration Agreements, 84 Fed. Reg. 34718 (July 18, 2019) (codified at 42 C.F.R. § 48) (providing background on the developments in arbitration-related regulations). As enacted, the new regulations prohibit facilities that participate in Medicare or Medicaid from "requir[ing] any resident or his or her representative to sign an agreement for binding arbitration as a condition of admission to, or as a requirement to continue to receive care at, the facility."[1]  42 C.F.R. § 483.70(n)(1). Assuming that facilities are complying with federal law, few arbitration agreements for nursing homes arising after the enactment of the CMS regulations would be considered "mandatory" under the majority's analysis.[2]

I am concerned that little will be clear to practitioners or the public in the wake of the majority opinion in this case. The majority opinion limits the analysis to a power of attorney that does not reference Tennessee Code Annotated section 34-6-109 and bats aside section 34-6-108(c)(9). But subsection 34-6-108(c)(9) signals that a health care power of attorney is needed for "any decisions regarding medical treatments or health care," which would likely include a related arbitration agreement on health care disputes. Would the analysis be different for a power of attorney that *does* reference Tennessee Code Annotated

---

[1] To ensure compliance, facilities must "explicitly inform the resident or his or her representative of his or her right not to sign the agreement," and the agreement "must explicitly state that neither the resident nor his or her representative is required to sign an agreement for binding arbitration as a condition of admission to, or as a requirement to continue to receive care at, the facility."  42 C.F.R. §§ 483.70(n)(1), (n)(4).

[2] As of 2023, 311 of the 316 licensed nursing homes in Tennessee are Medicare or Medicaid participants and are therefore subject to CMS regulations. *See* Tenn. Health Facilities Comm'n, Rep. to 113th General Assembly, *Nursing Home Inspection and Enforcement Activities*, at 4 (Feb. 2023), https://www.tn.gov/content/dam/tn/hfc/documents/HFC-Nursing_Home_Inspection_Enforcement_Report2023.pdf.

section 34-6-109?  Does the majority create a donut hole of sorts, where, under section 34-6-108(c)(9), a regular power of attorney is not sufficient to assist a relative in obtaining health care, but under the majority's interpretation of section 34-6-201(3), a health care power of attorney is not sufficient either?  I am not sure.  In an area where people need certainty about how to take care of incapacitated loved ones, the majority leaves significant uncertainty.

The majority downplays the uncertainty sure to follow its opinion, shrugging that "we may only decide the questions that are presented by this case."  Respectfully, the problem is not the issue presented in this case.  The problem is how the majority chooses to resolve it.  Judges have leeway in how they address the questions presented by the parties.  If the Court feels that resolving an issue presented by the parties requires us reconsider prior precedent, we may ask for supplemental briefing on that question so we can address it directly.  But the worst choice is to create two irreconcilable binding decisions and leave it for others to sort out.

If the reality is that the majority disagrees with the reasoning in *Owens*, it would be much more practical for the Court to just overrule it.  Leaving *Owens* in its current state of legal limbo is untenable.  At least overruling *Owens* would offer the opportunity to clarify the overall analytical framework and provide guidance to those who must try to obtain health care for loved ones who need assistance.

_____
HOLLY KIRBY, CHIEF JUSTICE