# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### February 12, 2025 Session

## STATE OF TENNESSEE v. SHANESSA L. SOKOLOSKY

**Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Smith County**
**No. 2017-CR-11      Brody Kane, Judge**

_____

### No. M2022-00873-SC-R11-CD

_____

This case is about mootness. Ms. Sokolosky appealed a probation revocation order and the denial of her motion to dismiss a violation arrest warrant. During the pendency of that appeal, Ms. Sokolosky's probation was fully revoked, she served her sentence, and she was released. The Court of Criminal Appeals then dismissed her appeal as moot because no active controversy existed for resolution. We respectfully disagree. Because Ms. Sokolosky's probation violation "may have adverse consequences after the completion of [her] term of commitment, the doctrine of mootness does not apply." *State v. Rodgers*, 235 S.W.3d 92, 93 (Tenn. 2007). We reverse the decision of the Court of Criminal Appeals and remand the case for consideration of Ms. Sokolosky's appeal.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals Reversed; Case Remanded to the Court of Criminal Appeals**

MARY L. WAGNER, J., delivered the opinion of the Court, in which HOLLY KIRBY, C.J., and JEFFREY S. BIVINS, SARAH K. CAMPBELL, and DWIGHT E. TARWATER, JJ., joined.

Comer L. Donnell, District Public Defender; Brennan M. Wingerter, Assistant Public Defender – Appellate Director; Brittany Davis Deatherage, Assistant District Public Defender, for the appellant, Shanessa L. Sokolosky.

Jonathan Skrmetti, Attorney General and Reporter; J. Matthew Rice, Solicitor General; Virginia N. Adamson, Assistant Solicitor General; Benjamin A. Ball, Senior Assistant Attorney General; Jason Lawson, District Attorney General; and Jack A. Bare, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## I.      FACTUAL AND PROCEDURAL BACKGROUND

On August 16, 2019, Ms. Sokolosky pleaded guilty to two misdemeanors.  She received consecutive 11-month, 29-day sentences that were suspended for supervised probation.  On February 19, 2020, the trial court issued an arrest warrant for Ms. Sokolosky alleging that she had violated probation by not reporting and not making scheduled payments for court costs.  Two years later, on April 28, 2022, Ms. Sokolosky was served and taken into custody.

Ms. Sokolosky filed a motion to dismiss the warrant.  She argued that the unethical practices of the private company running probation at the time meant the warrant relied upon untrustworthy records.

On June 2, 2022, the trial court held a hearing on both Ms. Sokolosky's motion to dismiss and whether she violated probation.  The trial court denied the motion to dismiss, finding the probation records to be "reliable and trustworthy" under the business records exception to hearsay.[1]  Then, the trial court found that she had violated probation by failing to report and not making payments.  The court extended her supervision by 11 months and 29 days.

On June 28, 2022, Ms. Sokolosky appealed the revocation order and the denial of her motion to dismiss.  While that appeal was pending, the trial court issued another arrest warrant for Ms. Sokolosky.  The warrant alleged she had violated probation again by absconding and testing positive for methamphetamine, amphetamine, and marijuana.  On October 28, 2022, the trial court found Ms. Sokolosky guilty of violating probation and required her to serve the remainder of her sentence in custody.

After hearing her appeal, the Court of Criminal Appeals *sua sponte* ordered Ms. Sokolosky to explain why the case should not be dismissed as her underlying sentence had expired.  Order for Suppl. Briefing, *State v. Sokolosky*, No. M2022-00873-CCA-R3-CD (Tenn. Crim. App. Jan. 24, 2024).  Ms. Sokolosky argued that her case was not moot under *State v. Rodgers*, which reversed a finding of mootness in comparable circumstances because probation violations can have "subsequent adverse effect[s]."  Appellant Resp. to Order, *State v. Sokolosky*, No. M2022-00873-CCA-R3-CD (Tenn. Crim. App. Feb. 05, 2024) (citing *Rodgers*, 235 S.W.3d at 97–98).  The Court of Criminal Appeals disagreed and dismissed her appeal as moot.  *State v. Sokolosky*, No. M2022-00873-CCA-R3-CD, 2024 WL 1780085, at *1 (Tenn. Crim. App. Apr. 25, 2024), *perm. app. granted*, (Tenn.

---

[1]      The Order denying the Motion to Dismiss is titled "Agreed Order Denying Defendant's Motion to Dismiss Probation Violation."  However, the substance of the Order does not reflect that it was done by consent.  Further, the transcript from the June 2, 2022 hearing clearly demonstrates that Ms. Sokolosky did not consent to the denial of her Motion to Dismiss.

Sept. 12, 2024). The court explained that a case is moot if it "no longer involves a present, ongoing controversy" and "no longer serves as a means to provide some sort of judicial relief to the prevailing party." *Id.* at *6 (quoting *All. for Native Am. Indian Rts. in Tenn., Inc. v. Nicely*, 182 S.W.3d 333, 338 (Tenn. Ct. App. 2005) (Koch, J.)). As Ms. Sokolosky was no longer in custody, the court found "no active controversy exist[ed]" to resolve and she had "received the relief to which she would be entitled." *Id.* at *8. The court reasoned that the *State v. Rodgers* holding on mootness was in the context of the Juvenile Post-Commitment Act, the juvenile analog to the Post-Conviction Procedure Act for adult offenders. *Id.* Since Ms. Sokolosky did not seek post-conviction relief, the court considered *Rodgers* to be procedurally inapposite and "decline[d] to extend the principles espoused." *Id.*

We granted Ms. Sokolosky's application for permission to appeal to address whether her case was rendered moot by the completion of her sentence.

## II. ANALYSIS

### A. The Mootness Doctrine

The applicability of the mootness doctrine is a question of law that is reviewed de novo. *See Huggins v. McKee*, 500 S.W.3d 360, 375 (Tenn. Ct. App. 2016), *perm. app. denied*, (Tenn. Sept. 22, 2016) (citing *All. for Native Am. Indian Rts. in Tenn.*, 182 S.W.3d at 338–39). Prior to reviewing the merits of a case, courts must analyze the threshold issue of justiciability. *UT Med. Grp., Inc. v. Vogt*, 235 S.W.3d 110, 119 (Tenn. 2007). Cases must be justiciable at all times, including during an appeal. *See Shaw v. Metro. Gov't of Nashville & Davidson Cnty.*, 651 S.W.3d 907, 912 (Tenn. 2022) (citing *McIntyre v. Traughber*, 884 S.W.2d 134, 137 (Tenn. Ct. App. 1994)). "For a controversy to be justiciable, a real question rather than a theoretical one must be presented and a legally protectable interest must be at stake." *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 193 (Tenn. 2000) (citing *Cummings v. Beeler*, 223 S.W.2d 913, 915 (Tenn. 1949)). This reflects the longstanding principle in Tennessee that "the province of a court is to decide, not advise, and to settle rights, not to give abstract opinions." *State v. Wilson*, 70 Tenn. 204, 210 (1879).

Mootness is a component consideration of justiciability. *See City of Memphis v. Hargett*, 414 S.W.3d 88, 96 (Tenn. 2013). A case becomes moot when "by a court decision, acts of parties, or other causes occurring after the commencement of the action the case has lost its controversial character." *West v. Vought Aircraft Indus., Inc.*, 256 S.W.3d 618, 625 (Tenn. 2008) (quoting *McCanless v. Klein*, 188 S.W.2d 745, 747 (Tenn. 1945)). That means that "the parties no longer have a continuing, real, live, and substantial interest in the outcome." *Hooker v. Haslam*, 437 S.W.3d 409, 417 (Tenn. 2014) (citing *Norma Faye Pyles Lynch Fam. Purpose LLC v. Putnam Cnty.*, 301 S.W.3d 196, 210 (Tenn. 2009)). Thus, moot cases are not justiciable because they lack "a genuine, existing

3

controversy requiring the adjudication of presently existing rights." *UT Med. Grp.*, 235 S.W.3d at 119 (citing *State ex rel. Lewis v. State*, 347 S.W.2d 47, 48–49 (Tenn. 1961)). The general rule is to dismiss a moot case because it "no longer serves as a means to provide some sort of judicial relief to the prevailing party." *Norma Faye*, 301 S.W.3d at 204 (citing *Knott v. Stewart Cnty.*, 207 S.W.2d 337, 338–39 (Tenn. 1948); *Bell v. Todd*, 206 S.W.3d 86, 96 (Tenn. Ct. App. 2005); *Massengill v. Massengill*, 255 S.W.2d 1018, 1019 (Tenn. Ct. App. 1952)).

Over time, Tennessee has recognized circumstances that provide a basis for not invoking the mootness doctrine. *See Norma Faye*, 301 S.W.3d at 204. These circumstances include:

> (1) when the issue is of great public importance or affects the administration of justice, (2) when the challenged conduct is capable of repetition and of such short duration that it will evade judicial review, (3) when the primary subject of the dispute has become moot but collateral consequences to one of the parties remain, and (4) when the defendant voluntarily stops engaging in the challenged conduct.

*Id.* Many courts, including this Court, have inartfully described these as "exceptions" to the mootness doctrine. *See, e.g.*, *Hooker*, 437 S.W.3d at 418–19; *Hudson v. Hudson*, 328 S.W.3d 863, 866 (Tenn. 2010); *Harriet Tubman Dev./CHA v. Locklin*, 386 S.W.3d 239, 243 (Tenn. Ct. App. 2012); *Metro. Gov't of Nashville & Davidson Cnty. v. Lee*, No. M2024-01182-COA-R3-CV, 2025 WL 1565481, at *6 (Tenn. Ct. App. June 3, 2025). These decisions primarily relied upon this Court's opinion in *Norma Faye Pyles Lynch Family Purpose LLC v. Putnam County*. 301 S.W.3d at 204.

*Norma Faye*, however, did not define these as "exceptions." *Id.* Describing these circumstances as exceptions implies that the matter is moot, but the court proceeds anyway. In other words, to apply an exception, a court would need to find that the matter has lost its "genuine, existing controversy" such that it no longer requires the "adjudication of presently existing rights." *UT Med. Grp.*, 235 S.W.3d at 119 (citing *Lewis*, 347 S.W.2d at 48–49). In this sense, the collateral consequences doctrine identified in *Norma Faye* is not an actual exception. Instead, it prevents finding mootness in the first place.[2]

When this Court discussed collateral consequences in *Norma Faye*, it cited numerous cases that were not in fact moot because collateral consequences remained to one of the parties. 301 S.W.3d at 204 & n.12 (citing *May v. Carlton*, 245 S.W.3d 340, 344 & n.3 (Tenn. 2008); *State v. McClintock*, 732 S.W.2d 268, 272 (Tenn. 1987); *State v. McCraw*, 551 S.W.2d 692, 694 (Tenn. 1977); *Parton v. State*, 483 S.W.2d 753, 754 (Tenn.

---

[2] We take no position here on whether the other circumstances identified in *Norma Faye* are properly understood as exceptions to the mootness doctrine or instead situations in which a case is not moot.

Crim. App. 1972)).  Notably, *Norma Faye* and those prior cases did not adopt collateral consequences as an "exception" to the mootness doctrine.  As described below, this is consistent with the application in *State v. Rodgers*.  We clarify today that a finding of collateral consequences is not an exception to a finding of mootness, but instead, prohibits a finding of mootness as there remains a "genuine, existing controversy requiring adjudication of presently existing rights." *UT Med. Grp.*, 235 S.W.3d at 119 (citing *Lewis*, 347 S.W.2d at 48–49).

## B.  Stare Decisis

Additionally, this case concerns the principles of stare decisis:

> This court recognizes to its fullest extent the necessity for stability, consistency, and a firm adherence to the doctrine of stare decisis . . . but, if an error has been committed, and becomes plain and palpable, the court will not decline to correct it, even though it may have been reasserted and acquiesced in for a long number of years.

*Arnold v. Mayor of City of Knoxville*, 90 S.W. 469, 470 (Tenn. 1905).  Hence, we "very sparingly" exercise the power to overrule our prior decisions, and "only when the reason is compelling." *Edingbourgh v. Sears, Roebuck & Co.*, 337 S.W.2d 13, 14 (Tenn. 1960) (citing *Burris v. McConnell*, 206 S.W.2d 894 (Tenn. 1947); *J. T. Fargason Co. v. Ball*, 159 S.W. 221, 222 (Tenn. 1913)).  Compelling reasons include when "there is obvious error or unreasonableness in the precedent, changes in conditions which render the precedent obsolete, the likelihood that adherence to precedence would cause greater harm to the community than would disregarding stare decisis, or an inconsistency between precedent and a constitutional provision." *In re Est. of McFarland*, 167 S.W.3d 299, 306 (Tenn. 2005).

## C.  Discussion

In considering this matter, we must decide whether Ms. Sokolosky's appeal is moot.  Ms. Sokolosky maintains that her appeal is not moot.  She relies heavily on *Rodgers*, which she describes as "nearly identical." Appellant Br. at 12–13 (citing *Rodgers*, 235 S.W.3d at 93).  In this light, Ms. Sokolosky contends that we are bound to find her appeal is not moot. *Id.*  Alternatively, Ms. Sokolosky argues that we should apply one of the mootness exceptions.[3]  Appellant Br. at 14; Appellant Reply Br. at 26.

---

[3]     Ms. Sokolosky primarily focuses on the collateral consequences "exception," but also contends the public importance exception would apply.  We use the term "exception" in an effort to accurately describe the parties' arguments.  However, as noted above, some of these circumstances do not truly constitute exceptions.

On the other hand, the State distinguishes this matter from *Rodgers*, insisting that the *Rodgers* holding is limited to the juvenile context. Appellee Br. at 27. To the extent this Court disagrees, the State asks us to overturn *Rodgers*. *Id.* at 28. The State compares this matter to *State ex rel. Lewis v. State*. *Id.* at 18–19 (citing *Lewis*, 347 S.W.2d at 47–49). The State points out that in *Lewis*, we did not permit a habeas corpus petitioner to challenge the statutory authority under which he was arrested after a grand jury declined to indict him and he was released from jail. *Id.* at 18 (citing *Lewis*, 347 S.W.2d at 47). Finally, the State asks this Court to follow *Spencer v. Kemna* and find that the collateral consequences "exception" does not apply to probation revocation appeals for an expired sentence. *Id.* at 21–23 (citing *Spencer v. Kemna*, 523 U.S. 1 (1998); *State v. Legg*, 417 P.3d 592, 595, 598–602 (Utah 2018) (following *Spencer* to find revocation appeal moot after the underlying sentence expired); *People v. DeLeon*, 399 P.3d 13, 17 (Cal. 2017) (applying *Spencer*'s test to a parole revocation appeal)).[4]

As correctly noted by the State, this court in *Rodgers* found the issue was not moot and did not address the mootness exceptions. Appellee Br. at 28 (citing 235 S.W.3d at 98). In *Rodgers*, the petitioner was committed to a youth development center after the juvenile court found that he had violated his probation. *See* 235 S.W.3d at 93–94. Before the Court of Appeals, both parties agreed that the juvenile court acted unlawfully by incarcerating the petitioner for violating an unwritten modification to his probation. *See State v. Rodgers*, No. W2005-00632-COA-R3-CV, 2006 WL 1408401, at *2–3 (Tenn. Ct. App. May 23, 2006), *rev'd*, 235 S.W.3d 92 (Tenn. 2007). Nonetheless, the Court of Appeals dismissed the appeal as moot because the petitioner had attained the age of nineteen. *See id.* at *3. The court reasoned that it could no longer grant any relief because the petitioner had been released and could not be incarcerated for his delinquent juvenile acts. *See id.*

We reversed. We noted that the petitioner's probation violation could be used for sentence enhancement under Tennessee Code Annotated section 40-35-114(8) (2006). *See Rodgers*, 235 S.W.3d at 98 (citing *State v. Jackson*, 60 S.W.3d 738, 743–44 (Tenn. 2001)). Due to the possibility of this "subsequent adverse effect," we held that the appeal was a "genuine and existing controversy, calling for present adjudication." *Id.* at 97–98 (citing *Lewis*, 347 S.W.2d at 48). We specified that this meant "the doctrine of mootness does not apply." *Id.* at 93. Accordingly, we did not "consider the applicability of any exceptions to the mootness doctrine." *Id.* at 98.

The Court of Criminal Appeals below found *Rodgers* distinguishable by focusing on the requirements of the Juvenile Post-Commitment Act. *See Sokolosky*, 2024 WL 1780085, at *8. However, we do not agree that the juvenile court or post-commitment setting sufficiently distinguishes *Rodgers*. *See* 235 S.W.3d at 98. The holding in *Rodgers*

---

[4]     While our conclusion differs from *Spencer*, the *Spencer* Court did not characterize collateral consequences as an "exception" to mootness. Instead, the *Spencer* Court agreed that collateral consequences can prohibit a matter from becoming moot. 523 U.S. at 7.

was not premised on the status of the petitioner as a juvenile or the juvenile post-commitment procedures. Instead, it was based on the continued impact to the petitioner's record from the trial court finding a probation violation. *See id.* at 97–98.

Therefore, *Rodgers* did not define an exception to mootness but instead identified one scenario where, due to collateral consequences, a case was simply not moot. *See id.* at 98. *Rodgers* held that an appeal of a wrongful probation violation remains a "genuine and existing controversy, calling for present adjudication" despite the expiration of the underlying sentence. *Id.* at 98–99 (quoting *Lewis*, 347 S.W.2d at 48). As the *Rodgers* court explained, a probation violation could result in a sentence enhancement under Tennessee Code Annotated section 40-35-114(8). *Id*. at 98. Such an appeal is not moot because an individual suffers an ongoing harm as "a probation violation . . . may have a subsequent adverse effect." *Id.*

Rather than an extension of *Rodgers*, Ms. Sokolosky's appeal presents nearly an identical case. *See* 235 S.W.3d 92. Ms. Sokolosky appeals a probation revocation order. *Sokolosky*, 2024 WL 1780085, at *1. Like *Rodgers*, she has been released from confinement prior to the disposition of her appeal. *Id.* at *7. She continues to have this probation violation on her record. Appellant Br. at 12*.* She seeks relief "because a probation violation [] may have adverse consequences after the completion of a term of commitment." *See id.* at 12–13 (citing *Rodgers*, 235 S.W.3d at 93). Like in *Rodgers*, a probation violation can specifically impact sentencing and decisions regarding alternative sentences, or the type and amount of bond. *See* Tenn. Code Ann. §§ 40-11-115(b)(5) (2019 & Supp. 2024), 40-11-118(b)(5) (2019 & Supp. 2024), 40-35-103(1)(c)–(5) (2019 & Supp. 2024), 40-35-114(8) (2019 & Supp. 2024); *see also State v. Caudle*, 388 S.W.3d 273, 280 (Tenn. 2012) (trial court correctly applied sentence enhancement factor § 40–35–114(8) when defendant admitted to repeatedly violating probation); *State v. Cross*, 362 S.W.3d 512, 527 (Tenn. 2012) (trial court correctly applied sentence enhancement factor § 40–35–114(8) when defendant violated terms of his probation). Given nearly identical circumstances, this Court is bound to reach the same conclusion: Ms. Sokolosky's appeal is not moot due to collateral consequences. *See Rodgers*, 235 S.W.3d at 98.

Our decision could differ if we accepted the State's suggestion to abandon *Rodgers* and adopt the reasoning of *Spencer*. Importantly, this Court is not bound to follow *Spencer*. Unlike the United States Constitution, Tennessee's constitution does not limit the judicial power to "cases" or "controversies." *See Case v. Wilmington Trust*, 703 S.W.3d 274, 286 (Tenn. 2024) (citing Tenn. Const. art. II, §§ 1–2; *Norma Faye*, 301 S.W.3d at 202).

In *Spencer*, the United States Supreme Court affirmed that a habeas petition was moot when the petitioner sought to invalidate a parole revocation after the underlying term of imprisonment had been served. *See* 523 U.S. at 3. The court explained that because the petitioner could not show concrete collateral consequences flowing from the revocation,

the case was moot for lack of standing under the federal constitution's "case-or-controversy" requirement. *See id.* at 14–17.

We decline to overturn *Rodgers* under the principles of stare decisis. Nine years **after** *Spencer* was decided, this Court was squarely presented with the same opportunity to follow *Spencer's* collateral consequences reasoning. And we did not. *See Rodgers*, 235 S.W.3d 92.

We require a compelling reason to now overturn *Rodgers*. *See McFarland*, 167 S.W.3d at 306; *Edingbourgh*, 337 S.W.2d at 14. And the State has failed to meet that burden. There is no conflict between *Rodgers* and the provisions of our constitution. *See Wilmington Trust*, 703 S.W.3d at 286. The State has not shown the "obvious error or unreasonableness" of *Rodgers*, its obsolescence amidst changing conditions, or that a greater harm to the community would result from following it than overturning. *See McFarland*, 167 S.W.3d at 306. Finally, we do not agree that upholding *Rodgers* conflicts with our other decisions on justiciability.

We find this case distinct from *State ex rel. Lewis v. State*. In *Lewis*, when the grand jury declined to indict the petitioner, he was released and prosecution ceased. *See* 347 S.W.2d at 48. With the grand jury's decision, there was no ongoing effect on the petitioner and no practical relief could flow to him from his habeas corpus petition. *See Knott*, 207 S.W.2d at 338–39; *Lewis*, 347 S.W.2d at 48. At that moment, the case became moot because it had lost its "controversial character." *See West*, 256 S.W.3d at 625; *Lewis*, 347 S.W.2d at 48. As a result, the petitioner could not continue attacking the constitutionality of the statute that authorized his arrest because he had no legal interest at stake and the constitutional question had become theoretical as to him. *See Brown & Williamson Tobacco Corp.*, 18 S.W.3d at 19; *Lewis*, 347 S.W.2d at 47–48.

Conversely, Ms. Sokolosky continues to challenge whether she engaged in the conduct for which her probation was revoked because the violation remains on her criminal record. *See Lewis*, 347 S.W.2d at 49. In other words, there persists a "genuine, existing controversy" on the factual allegations of Ms. Sokolosky's appeal, not a theoretical question. *See UT Med. Grp.*, 235 S.W.3d at 119 (citing *Lewis*, 347 S.W.2d at 48–49); *Brown & Williamson Tobacco Corp.*, 18 S.W.3d at 19. The parties involved here "have a continuing, real, live, and substantial interest in the outcome," *Hooker*, 437 S.W.3d at 417 (citing *Norma Faye*, 301 S.W.3d at 210), because the probation violation will otherwise stay on Ms. Sokolosky's record. Whereas, if the appeal is successful, Ms. Sokolosky could be granted the practical relief of removing that violation from her record and avoiding any consequences that would flow therefrom.[5] *See Knott*, 207 S.W.2d at 338–39.

---

[5] Currently, Ms. Sokolosky has two additional probation violations on her record stemming from this term of supervision. If her appeal on the merits is successful, she could have none.

Stare decisis requires that we overturn precedent sparingly. *See Edingbourgh*, 337 S.W.2d at 14. We see no compelling reasons to overturn *Rodgers* today. *See McFarland*, 167 S.W.3d at 306. Accordingly, we find that this matter is not moot. This holding pretermits the need to consider Ms. Sokolosky's contentions regarding the "public importance exception" to the mootness doctrine.

## III.    CONCLUSION

We reverse the judgment of the Court of Criminal Appeals because Ms. Sokolosky's appeal is not moot under *State v. Rodgers*. We remand the case to the Court of Criminal Appeals for consideration on the merits. It appearing that Ms. Sokolosky is indigent, the costs of this appeal are taxed to the State of Tennessee.

_____

MARY L. WAGNER, JUSTICE