IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
October 4, 2023 Session

## FAMILY TRUST SERVICES LLC ET AL. v. GREEN WISE HOMES LLC ET AL.

**Appeal by Permission from the Court of Appeals
Chancery Court for Davidson County
No. 15-0780-BC     Anne C. Martin, Chancellor**

———————————————————

**No. M2021-01350-SC-R11-CV**

———————————————————

In this case, plaintiffs alleged defendants committed fraud in connection with their property rights. After a jury trial, plaintiffs moved for a new trial asking the trial court to fulfill its role as thirteenth juror. The trial court denied the motion, and the Court of Appeals reversed upon finding the trial court misconceived its role as thirteenth juror. When a trial court misconceives its role as thirteenth juror or applies an incorrect standard, remand for a new trial historically has been the only remedy available under common law. In this appeal, we consider whether our law should allow the alternative remedy of remand for the trial court to fulfill its role as thirteenth juror under Tennessee Rule of Civil Procedure 59.06. We hold that remand for the trial court to fulfill its role as thirteenth juror is an appropriate remedy when a civil trial court misconceives that role or applies an incorrect standard. We further hold that the lower courts erred in finding that a claim for unjust enrichment requires a voluntary conferral of a benefit. Finally, we hold that our law does not recognize a claim for misappropriation or conversion of a right of redemption. We affirm in part and reverse in part the decision of the Court of Appeals, and remand for proceedings consistent with this opinion.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals
Affirmed in Part and Reversed in Part; Remanded to the Chancery Court**

DWIGHT E. TARWATER, J., delivered the opinion of the court, in which HOLLY KIRBY, C.J., and JEFFREY S. BIVINS, ROGER A. PAGE, and SARAH K. CAMPBELL, JJ., joined.

Henry E. Hildebrand, IV, and Denis G. Waldron, Nashville, Tennessee, for the appellants, Green Wise Homes LLC, Charles Edward Walker, and Jon Paul Johnson.

Eugene N. Bulso, Jr., and Paul J. Krog, Brentwood, Tennessee, for the appellees, Carl Chambers, Debra Irvin, Glenna Davis Ponce, and Dorothy Booher.

**OPINION**

# I.  FACTUAL AND PROCEDURAL BACKGROUND

Defendants Charles Walker and Jon Paul Johnson owned a business, REO Holdings, LLC ("REO"), through which they bought properties at tax sales and resold them at a profit. They also obtained rights of redemption to properties previously sold at tax sales and used these rights of redemption to redeem and obtain title to the properties. However, many of these rights of redemption were later alleged to be fraudulent. Another was found by the jury in this case to have been obtained through misrepresentation. Of the many properties that passed through Defendants' hands, four are at issue in this appeal. While they bear similarities with each other, the facts of each are unique.

*Chambers Property*

Plaintiff Carl Chambers was the grandson of Maggie Chambers, who owned a house at 2131 11th Avenue in Nashville. She willed the property to her children, including Carl Chambers' father.[1] After her death, taxes went unpaid on the property, and the property was subsequently sold at tax sale in November 2013.

After the property was sold at tax sale, REO sought to redeem the property within the one-year statutory redemption period using the redemption rights of the property's alleged heirs. *See* Tenn. Code Ann. § 67-5-2701(a) (2012) (amended 2014). Walker filed a notice of redemption in Davidson County Chancery Court on August 22, 2014, as "Attorney for Estate of Maggie Chambers" and paid $2,194.99 to redeem the property. After the court entered a decree for redemption, Walker executed a quitclaim deed signed by an alleged heir, Dorothy Turner Huffine, conveying her interest in the Chambers property to REO. However, Ms. Huffine had no actual interest in the Chambers property. She was heir to a different property on 518 South 14th Street in Nashville that her mother, Maggie Merritt Turner Chambers, had willed to her as trustee for Ms. Huffine's daughter, Alice Williams.[2] Walker alleged that when he presented Ms. Huffine's quitclaim deed to the title company, it informed him that he also needed a quitclaim deed from the beneficiary

---

[1] Carl Chambers' father had passed away before the property was sold at tax sale, and Mr. Chambers was heir to his father's interest in the property.

[2] In fact, the quitclaim deed that Ms. Huffine signed contains a derivation clause citing Maggie Merritt Turner Chambers' will found on a specific page of the Probate Court Clerk Office's records in Davidson County. However, the cited will clearly designates 518 South 14th Street as the property being conveyed to Ms. Huffine and her daughter, not 2131 11th Avenue.

The Maggie Chambers who was the owner of 2131 11th Avenue also had a will on file with the Probate Court Clerk's Office in Davidson County. Her will clearly designated 2131 11th Avenue as the property she conveyed to her heirs, which did not include Ms. Huffine or Ms. Williams.

of the trust, Alice Williams. Walker then produced a quitclaim deed purportedly signed by Ms. Williams and filed it with the Davidson County Register of Deeds. The Alice Williams quitclaim deed bore the signature and seal of a Texas notary public named Jennifer Clark. Ms. Clark testified that she never notarized the quitclaim deed and that her signature and notary stamp were forged. Walker produced an original of the Dorothy Huffine quitclaim deed, which Ms. Huffine indeed signed, but not of the Alice Williams quitclaim deed.[3]

Walker subsequently filed suit to quiet title to the property. In the suit, he named as defendants the actual heirs of the Chambers property at 2131 11th Avenue, including Mr. Chambers' father and his father's siblings, and "Unnamed or Unknown Heirs of Maggie Chambers." Mr. Chambers did not receive notice of the quiet title action and was unaware that his grandmother's property had been sold at tax sale and redeemed by Walker. Neither he nor any of the actual heirs of Maggie Chambers gave Walker permission to redeem the property.

Defendants later sold the property at a profit for $28,000.

*Irvin Property*

Plaintiff Debra Irvin inherited a house at 1125 Sunnymeade Drive in Nashville from her mother. In 2011, Ms. Irvin filed for bankruptcy. She owed over $256,000 on two mortgages on the house—greater than its value[4]—and planned to surrender it to her creditors as part of the bankruptcy settlement. Because she planned to surrender her house to creditors, she stopped paying property taxes. The house was later sold at a Metropolitan Government of Nashville and Davidson County tax sale on September 18, 2013, for $71,000.

After the property was sold at tax sale, Walker sent an employee of his title company, Julie Coone, to Ms. Irvin's residence three times to try to persuade her to sell her redemption rights to REO. On the third visit, Ms. Coone told Ms. Irvin that "something is better than nothing"—implying that Ms. Irvin would receive nothing for the property if she did not agree to sell her redemption right. Ms. Irvin alleged that she did not understand the contract that she signed that day, and that she told Ms. Coone that she did not understand it. Moreover, Ms. Coone did not inform her that she could potentially receive nearly

---

[3] Moreover, Defendants were never able to able to produce originals of any of the documents that notaries testified to as being forged. Defendants recorded them via an online recording system in the respective counties' register of deeds offices.

[4] In her bankruptcy petition, Ms. Irvin listed the value of the house at $139,000, and the amount owed on the two mortgages at $256,270.79.

$70,000 in excess proceeds from the tax sale if she did not sign the documents.[5] Ms. Irvin sold her right of redemption to REO for $5,000, and both she and her husband signed a contract and quitclaim deed conveying the same.

Walker recorded the quitclaim deed two days later on August 11, 2014, and subsequently filed a notice of redemption in Davidson County Chancery Court after paying $12,474.83 in delinquent taxes, fees, and interest.

Ms. Irvin was later informed that because she had sold her right of redemption to REO, she forfeited her right to receive excess proceeds from the tax sale. She called Walker irate, "cussed him out and hung up."

After Walker's conversation with Ms. Irvin, he filed another quitclaim deed for the property in Davidson County Chancery Court on November 5, 2014. However, the signature page bearing Ms. Irvin's and her husband's signatures on this second quitclaim deed was the same signature page that had been attached to the first quitclaim deed filed on August 11. That is, Walker took the signature page from the first quitclaim deed and attached it to the second. Ms. Irvin did not give Walker permission to attach her signature to the second quitclaim deed.

Defendants rehabilitated the property, and later sold it at a profit for $315,000.

*Davis Property*

Plaintiff Glenna Davis Ponce was the granddaughter of William and Glenna Davis, who owned a house at 16 North Parkdale in Chattanooga. Both Ms. Ponce's grandfather and her father, the Davises' only child, passed away. Her grandmother then passed away intestate. Taxes went unpaid on the property, and it was sold at tax sale in Hamilton County on June 5, 2014.

Walker attempted to redeem the property by purporting to represent the interests of an alleged heir. On June 2, 2015, Walker filed a "Statement of Person Redeeming Property Sold at Tax Sale" in Hamilton County Chancery Court. The same day he filed a notarized affidavit of heirship purportedly signed by one James Hixson, alleged to be Glenna Davis'

---

[5] Ms. Irvin owed more on the house than the tax sale had brought in, and the mortgagee banks had the right to recoup all excess proceeds of the tax sale. *See* Tenn. Code Ann. § 67-5-2707 (2012) (repealed 2014 and replaced by Tenn. Code Ann. § 67-5-2702). The banks would have had to file a claim for the excess proceeds under Tennessee Code Annotated section 67-5-2707. Likewise, Ms. Irvin would have had to file a claim under section 67-5-2707 and serve both mortgagee banks in order to recover excess proceeds. Ms. Irvin would only have recovered the proceeds if the banks had failed to assert their superior claim to the proceeds after receiving notice of Ms. Irvin's claim. Tenn. Code Ann. § 67-5-2707(c) (2012) (repealed 2014).

brother and the sole heir of 16 North Parkdale; Walker also filed a notarized quitclaim deed conveying Hixson's interest in the property to REO. Both the affidavit of heirship and quitclaim deed were allegedly notarized by Jesse Berber, a California notary. However, Berber testified that he neither signed nor notarized the documents; his signatures and notary stamps on both documents were forged.

Walker paid the chancery court clerk $7,467.88 to redeem the property; however, after Plaintiffs filed suit in this case, Walker withdrew the attempted redemption.

Ms. Ponce was unaware that her grandparents' property had been sold at tax sale and that Walker had attempted to redeem it. At the time of trial, Ms. Ponce was living in Texas and was suffering from dementia. She did not give Walker permission to redeem the property.

*Booher Property*

Plaintiff Dorothy Booher's husband, Alan Booher,[6] was the son of Betty Burns. Ms. Burns and her husband owned property at 544 Las Lomas Drive in Chattanooga. After Ms. Burns' death, Mr. Booher became an heir of the property along with his siblings. Taxes went unpaid on the property; it was sold at a Hamilton County tax sale on June 5, 2014, and confirmed by final decree on June 16, 2014.

Once again, Walker attempted to redeem the property by purporting to represent the interests of a nonexistent heir. On June 12, 2015, Walker filed an affidavit of heirship in the Hamilton County Register of Deeds bearing the signature of one Allen Booker. On the same day, Walker filed a quitclaim deed conveying Mr. Booker's interest in the property to REO. Walker also filed a "Statement of Person Redeeming Property Sold at Tax Sale" in Hamilton County Chancery Court as Mr. Booker's assignee. However, both the affidavit of heirship and quitclaim deed were alleged forgeries, as Mr. Booker's signature on both was allegedly copied from a 1992 New Jersey deed. Needless to say, Allen Booker was never an heir of Ms. Burns' estate—Ms. Burns' son's name was Allen Booher, not Booker. The New Jersey notary who purportedly notarized both documents, Mary J. Sims, testified that she never notarized the affidavit of heirship or quitclaim deed, and that her signatures and notary stamps were forged.

Walker paid the chancery court clerk $11,923.80 to redeem the property. After Plaintiffs filed suit in this case, Walker withdrew the attempted redemption of the property.

_____

[6] Alan Booher passed away before Dorothy Booher was added to the suit; Ms. Booher filed claims as the surviving spouse.

Ms. Booher had been unaware that the property was sold at tax sale, and that Walker had attempted to redeem the property through documents bearing the forged signatures of "Allen Booker." Neither she nor her husband gave Walker permission to redeem the property.

None of these four Plaintiffs were the original Plaintiffs to this case, as Defendants' alleged fraudulent activity was not confined to these four properties. Between 2014 and 2015, Walker and Johnson filed numerous redemptions of similar quality for other properties sold at tax sale. These other redemptions likewise utilized documents bearing the forged signatures of alleged heirs or lienholders. Even so, Defendants successfully redeemed some of the properties, and sold them at a profit.

Once Defendants' scheme began to be unraveled, the actual heirs of these properties and those who had legally purchased the properties at tax sale brought suit. Heirs and tax sale purchasers initially filed a putative class action in Davidson County on June 30, 2015, seeking injunctive and declaratory relief and compensatory and punitive damages against Walker, Johnson, REO, and others that were alleged to have been involved in the fraudulent scheme. The suit went through several iterations of class action complaints and took a long detour through federal bankruptcy court, in which the claims of all original Plaintiffs[7] settled against Walker, Johnson, and REO. Plaintiffs' claims against the remaining defendants were remanded to state court.

Upon remand to state court, Carl Chambers sought to be added as a Plaintiff on August 31, 2018, and sought to once again add Walker and Johnson as Defendants. A few days later, on September 5, 2018, Walker and Johnson formed Green Wise Homes, LLC ("Green Wise") in Delaware. They collectively conveyed sixteen parcels of real property by quitclaim deed to Green Wise. Walker again removed the lawsuit to federal bankruptcy court on September 13, 2018, and it was again remanded to state court on April 1, 2019. Plaintiffs filed a lien *lis pendens* on Green Wise's assets and sought to add Green Wise as a Defendant. Less than an hour after the chancellor reopened the remanded suit in Davidson County, Walker removed the suit to federal bankruptcy court for the third time.

Following the third remand to state court, Plaintiffs filed their Fourth Amended Class Action Complaint. Carl Chambers stood as putative class representative on claims of defamation of title, fraud, unjust enrichment, theft of the right of redemption, and fraudulent transfer of assets, among other claims, against Walker, Johnson, Green Wise, and other Defendants. Debra Irvin subsequently moved to intervene as Plaintiff, alleging

---

[7] One of these original Plaintiffs was Family Trust Services, LLC, who represented the interests of an heir and tax sale purchaser of two other properties; Defendants redeemed one of these properties and attempted to redeem the other. Family Trust Services settled with Walker, Johnson, and REO in federal bankruptcy court. Upon remand to state court, Family Trust Services continued its claims against the remaining Defendants. Hence, the style of this case.

claims of fraud, unjust enrichment, civil conspiracy, and fraudulent transfer of assets, among others, against Walker, Johnson, Green Wise, and other Defendants.

Following a hearing on Defendants' motion for judgment on the pleadings, the chancellor dismissed Plaintiffs' claims for unjust enrichment, finding that *B & L Corp. v. Thomas and Thorngren, Inc.* requires that a claim of unjust enrichment involve a "*willing conferring of a benefit by one party to the other and is contraindicated when the benefit alleged is involuntarily conferred.*" 162 S.W.3d 189, 217 (Tenn. Ct. App. 2004) (emphasis added). The chancellor found that as the Plaintiffs did not know of Defendants' actions, they could not sustain a claim for unjust enrichment. Moreover, because Irvin received the compensation she agreed to, she could not assert a claim for unjust enrichment. The chancellor also dismissed the claim for theft of the right of redemption, finding that only claims for conversion of tangible property, and not intangible property, are actionable under Tennessee law. In addition, the chancellor denied class certification.

After the court entered its order on the motion for judgment on the pleadings, Glenna Davis Ponce and Dorothy Booher were subsequently joined as Plaintiffs, and Plaintiffs filed an Amended and Consolidated Complaint. In the amended complaint, Ms. Ponce and Ms. Booher also alleged claims of defamation of title, fraud, civil conspiracy, and fraudulent transfer of assets, among other claims, against Walker, Johnson, Green Wise, and other Defendants. On August 2, 2021, the trial court granted the Defendants' motion to bifurcate the trial as to claims by Carl Chambers, Debra Irvin, Glenna Davis Ponce, and Dorothy Booher against Walker, Johnson, and Green Wise.

The parties proceeded to jury trial on September 13, 2021. The trial was video recorded in its entirety pursuant to Tennessee Supreme Court Rule 26 and the local rules of Davidson County Circuit Court. After a six-day trial, the jury found in favor of Defendants on all claims except for Ms. Irvin's claim of fraudulent misrepresentation against Walker. The jury also found that Defendants had made a fraudulent transfer with respect to all four Plaintiffs. The jury awarded Ms. Irvin $53,450 in compensatory damages.

Plaintiffs filed a motion for a new trial, alleging that the evidence presented at trial preponderated against the jury's verdict and requesting the court to set aside the verdict in its role as thirteenth juror. During the hearing on the motion for a new trial, the trial court made comments indicating that it misconceived its duty as thirteenth juror by improperly deferring to the jury's verdict:

> COURT: [W]hen I'm trying to put myself in the jury's place, I'm wondering if where they got hung up was what kind of loss, if any, that your clients experienced because, A, they had such a small interest in the property; B,

they never acted upon it, never knew it existed, so forth and so on, and that really when it came down to it, were they damaged in any way.

I don't know. But, you know, at summary judgment, you know, my determination was there was definitely an interest, albeit maybe one that is perceived as intangible, but that it could go forward. But, you know, I didn't know what a jury was going to do. And I didn't—I thought that you were entitled to go to a jury to ask a jury what to do. And I just wonder if that's the problem—or that was the problem. I don't know. That they just get it or didn't see where there was a loss that was ascertainable.

. . . .

. . . And I wonder if their hang-up was if these folks really suffered any loss. I don't know.

Plaintiffs' counsel pressed the court to make the determination for itself as the thirteenth juror. Plaintiffs argued that Defendants Walker and Johnson had committed perjury at trial when they testified that two other individuals, Kevin Watts and Jose Lorenzo, had produced the forged documents used to obtain the rights of redemption. (Defendants had testified at trial that Watts and Lorenzo procured the alleged forged deeds on a contractual basis for REO, and that the originals of the deeds were given back to those individuals. At the time suit was filed—only a few months after Watts and Lorenzo allegedly procured the deeds—Watts was deceased, and Lorenzo's whereabouts were unknown.) Plaintiffs argued that as a result of Defendants' perjury, the court should not be satisfied with the verdict. After hearing these arguments, the court stated:

COURT: Well the first that I ever heard of Mr. Watts and Mr. Lorenzo was at trial. . . . But, you know, I don't know that a jury would have but one conclusion that they didn't exist.

. . . .

And, you know, I don't know what the conclusion would be about those two. It certainly seems suspect, but I don't know that I could say any reasonable juror would have to assume those two gentlemen don't exist. I don't know. . . .

. . . .

And in this case when Mr. Walker answered the way he did, that's why I had the side bar because I was not confident he was answering—he was answering truthfully.

But, so your position is the fact that he did that—and your argument is more than one occasion—that that in and of itself—or that cumulatively, I guess, should invalidate the jury verdict?

Defendants counterargued that the perjury issue was not dispositive, as the only dispositive issue was whether the Defendants' actions were the actual cause of Plaintiffs' losses. The court said it would look more closely at the issue and issue a written order.

The trial court subsequently issued its written order denying the motion for a new trial, stating, "The Court does not find that Plaintiffs have presented a sufficient basis for it to vacate the jury verdict. No error has been identified and, the Court finds, a reasonable juror could have and did reach a result of no liability on the claims at issue."

Plaintiffs appealed, arguing that the trial court misconceived its role as thirteenth juror, requiring a new trial, and that the trial court erred by dismissing Plaintiffs' claims for unjust enrichment and "intentional interference with" a right of redemption on Defendants' motion for judgment on the pleadings. The Court of Appeals found that the trial court had in fact misconceived its role as thirteenth juror and remanded for a new trial. *Family Trust Services LLC v. Green Wise Homes LLC*, No. M2021-01350-COA-R3-CV, 2022 WL 17086782, at *13 (Tenn. Ct. App. Nov. 21, 2022). The Court of Appeals upheld the trial court's dismissal of the unjust enrichment claim, finding that *B & L Corp.* precluded the claim as the benefit was not voluntarily conferred. *Id.* at *14–15. The court also upheld dismissal of the claim for intentional interference with a right of redemption. *Id.* at *15–17.

Following the Court of Appeals' decision, Defendants filed a petition for rehearing and argued for the first time that instead of an automatic remand for a new trial, an alternative remedy ought to be available: remand to the trial court to apply the correct thirteenth juror standard. This remedy was modeled on the dissenting opinion in *State v. Moats*, in which Justice Drowota proposed the remedy of remand for the trial court to apply the correct standard rather than automatic remand for a new trial. 906 S.W.2d 431, 436 (Tenn. 1995) (Drowota, J., dissenting). Nevertheless, the Court of Appeals denied the Defendants' petition for rehearing. Defendants then applied for permission to appeal in this Court, which we granted.

## II.    STANDARD OF REVIEW

We review de novo a motion for judgment on the pleadings. *Lawson v. Hawkins Co.*, 661 S.W.3d 54, 58 (Tenn. 2023) (citing *Mortg. Elec. Registration Sys., Inc. v. Ditto*, 488 S.W.3d 265, 275 (Tenn. 2015)).  A party may move for judgment on the pleadings "[a]fter the pleadings are closed but within such time as not to delay the trial."  Tenn. R. Civ. P. 12.03.  In reviewing a trial court's ruling on a motion for judgment on the pleadings, we must accept as true "all well-pleaded facts and all reasonable inferences drawn therefrom" alleged by the party opposing the motion. *McClenahan v. Cooley*, 806 S.W.2d 767, 769 (Tenn. 1991) (citing *Trigg v. Middle Tenn. Elec. Membership Corp.*, 533 S.W.2d 730, 732–33 (Tenn. Ct. App. 1975)).  Moreover, "[c]onclusions of law are not admitted nor should judgment on the pleadings be granted unless the moving party is clearly entitled to judgment." *Id.*  The ultimate question becomes whether "the Plaintiff's complaint states a cause of action that a jury should have been entitled to decide." *Id.*

The question of the proper remedy to apply when the trial court misconceives its role as thirteenth juror or applies an incorrect standard is a question of law that we review de novo.  Waiver is also a question of law that we would review de novo. *Jackson v. Burrell*, 602 S.W.3d 340, 344 (Tenn. 2020) (citing *Bryant v. Bryant*, 522 S.W.3d 392, 399 (Tenn. 2017)).

## III.    ANALYSIS

### *Plaintiffs' Waiver Argument*

Plaintiffs contend that Defendants waived their argument that an alternative remand remedy should be available when a civil trial court misconceives its role as thirteenth juror because Defendants raised it for the first time in a petition for rehearing in the Court of Appeals.  Defendants indeed first raised the issue in a petition for rehearing immediately after receiving an adverse ruling in the Court of Appeals.  Up to that point, Defendants had not argued that an alternative remand remedy should be available; they simply argued that the case should not be remanded at all.  We need not and do not decide whether Defendants waived review of the alternative remedy issue.  Rather, we exercise our discretion to hear the issue pursuant to Tennessee Rule of Appellate Procedure 13(b).[8]

---

[8] Under Tennessee Rule of Appellate Procedure 13(b), this Court has discretion to consider issues not properly presented for review "in order, among other reasons: (1) to prevent needless litigation, (2) to prevent injury to the interests of the public, and (3) to prevent prejudice to the judicial process."  Tenn. R. App. P. 13(b); *see also State v. Harbison*, 539 S.W.3d 149, 165 (Tenn. 2018); *In re Kaliyah S.*, 455 S.W.3d 533, 540 (Tenn. 2015).

Next, we must determine whether automatic remand for a new trial is the only available remedy when a civil trial court misconceives its role as thirteenth juror or applies an incorrect standard, or whether our law should allow the new, alternative remedy of remand for the trial court to fulfill its role under Tennessee Rule of Civil Procedure 59.06.

In Tennessee, a judge presiding over a jury trial has a duty not only to sit as judge, but must also sit as a thirteenth juror who independently reviews and weighs the evidence at trial. *Holden v. Rannick*, 682 S.W.2d 903, 904–05 (Tenn. 1984). If the trial court is dissatisfied with the jury's verdict or disagrees with the jury as to the weight of the evidence, it must order a new trial. Tenn. R. Civ. P. 59.06; *Meals ex rel. Meals v. Ford Motor Co.*, 417 S.W.3d 444, 420 (Tenn. 2013) (citing *Jones v. Idles*, 114 S.W.3d 911, 914–15 (Tenn. 2003)). The trial judge cannot simply defer to the jury's decision but must make an independent judgment. *Holden*, 682 S.W.2d at 906; *Bradley v. Bishop*, 538 S.W.3d 518, 536 (Tenn. Ct. App. 2017) (citing *Dickey v. McCord*, 63 S.W.3d 714, 718–19 (Tenn. Ct. App. 2001)). No verdict is valid unless it is approved by the trial judge acting as a thirteenth juror. *Meals*, 417 S.W.3d at 420; *see also Davidson v. Lindsey*, 104 S.W.3d 483, 488 (Tenn. 2003).

If the trial court simply upholds the verdict without a word, the appellate court presumes it fulfilled its role and the verdict stands on appeal. *Holden*, 682 S.W.2d at 905 (citing *Cent. Truckaway Sys. v. Waltner*, 253 S.W.2d 985, 991 (Tenn. Ct. App. 1952)). However, trouble ensues where the trial court upholds the verdict yet expresses some level of dissatisfaction with the verdict or with the weight of the evidence or makes statements indicating that it misconceives its duty as thirteenth juror. *Id.*; *see also Sherlin v. Roberson*, 551 S.W.2d 700, 701 (Tenn. Ct. App. 1976) (remanding for new trial after trial court approved verdict with "countervailing and irreconcilable remarks"). We have held that in such situations, remand for a new trial is the necessary and only remedy. *Holden*, 682 S.W.2d at 905; *cf. Moats*, 906 S.W.2d at 435 (remand necessary in criminal trials under Tennessee Rule of Criminal Procedure 33).

In this case, there is no question that the trial court misconceived its duty as thirteenth juror. Instead of independently weighing and passing on the evidence, it improperly deferred to the jury's verdict. Now we must decide whether the trial court's misconception of its thirteenth-juror role mandates a new trial, as we have previously held, or whether our law should permit an alternative remand remedy.

To answer that question, we look to the rule's common law origins. *See Moats*, 906 S.W.2d at 433 (citing *Curran v. State*, 4 S.W.2d 957, 958 (Tenn. 1928)). In our earliest cases, appellate courts remanded for a new trial only when the trial court clearly disagreed with the jury's verdict, yet denied a new trial. *See, e.g.*, *Tate v. Gray's Lessee*, 36 Tenn. (4

Sneed) 591, 595 (1857). The appellate courts there reasoned that they were only doing what the trial court should have done, had it fulfilled its duty—grant a new trial. *Id.*; *see also Cumberland Tel. & Tel. Co. v. Smithwick,* 79 S.W. 803, 804 (Tenn. 1904). In those early days, when a trial court made waffling remarks regarding sufficiency of the evidence yet did not clearly disagree with the jury's verdict, the verdict stood upon appeal. *See England v. Burt*, 23 Tenn. (4 Hum.) 399, 401 (1843).

Appellate courts later found that they had no jurisdiction to review the sufficiency of the evidence unless the trial court first had either explicitly approved or disapproved the verdict:

> It was [the trial judge's] duty either to approve or disapprove the verdict, and then, in due course of proceeding, let the aggrieved party bring the case into this court, if desired. It was his province, and his alone, to decide, in the first instance, whether or not judgment should be pronounced upon the verdict rendered by the jury. This court cannot decide the question originally. It has no original jurisdiction. It cannot "pass upon the evidence in the case" before the verdict of the jury has received the approval or disapproval of the trial judge.

*E. Tenn., Va. & Ga. Ry. Co. v. Lee*, 32 S.W. 249, 250 (Tenn. 1895); *see also Ill. Cent. R.R. Co. v. Brown*, 35 S.W. 560, 561 (Tenn. 1896). For a trial court to withhold approval or disapproval of the jury's verdict was to "pretermit action which must be taken before appellate jurisdiction can be conferred or acquired." *E. Tenn., Va. & Ga. Ry. Co.*, 32 S.W. at 250; *see also Cumberland Tel.*, 79 S.W. at 805 ("It has been held that this court has no power to act until the circuit judge has acted."). We explained why this role fell squarely within the province of the trial judge:

> [T]he circuit judge hears the testimony, just as the jury does, sees the witnesses, and observes their demeanor upon the witness stand; that, by his training and experience in the weighing of testimony, and the application of legal rules thereto, he is especially qualified for the correction of any errors into which the jury by inexperience may have fallen, whereby they have failed, in their verdict, to reach the justice and right of the case, under the testimony and the charge of the court; that, in our system, this is one of the functions the circuit judge possesses and should exercise—as it were, that of a thirteenth juror. So it is said that he must be satisfied, as well as the jury; that it is his duty to weigh the evidence, and, if he is dissatisfied with the verdict of the jury, he should set it aside. . . . It would be . . . a hazardous thing for this court to attempt to review at large the testimony of witnesses whose evidence was given orally in the court below, and to reverse the action

of a judge and jury thereon, who had seen the witnesses, and had had the opportunity of observing their demeanor and manner of testifying.[9]

*Cumberland Tel.*, 79 S.W. at 804. Because appellate courts found they could not fulfill this role, such cases were reversed and remanded for a new trial. *See, e.g.*, *E. Tenn., Va. & Ga. Ry. Co.*, 32 S.W. at 250. Likewise, when a trial court failed to independently pass upon the verdict because it improperly deferred to the jury's verdict, appellate courts reversed and remanded for a new trial. *See, e.g.*, *Nashville, Chattanooga, & St. Louis R.R. Co. v. Neely*, 52 S.W. 167, 168 (Tenn. 1899) (reversing and remanding when trial court stated that although facts were mixed, "it was a rule of his to rarely invade the province of the jury in setting aside their verdicts . . . .").

The automatic remand for new trial remedy was not called into question until *State v. Moats*.[10] 906 S.W.2d at 434. Although *Moats* was a criminal case interpreting the Tennessee Rules of Criminal Procedure, its analysis of the thirteenth juror rule is a helpful framework for our analysis here because it is the only case—civil or criminal—in which an alternative remedy has been suggested. The application of the thirteenth juror rule has varied slightly between criminal and civil courts in this state, yet some basic principles of the thirteenth juror rule pervade both the civil and criminal spheres. As a result, civil courts have cited *Moats* and other criminal cases for guidance on the thirteenth juror rule. *See, e.g.*, *Borne v. Celadon Trucking Servs., Inc.*, 532 S.W.3d 274, 310 (Tenn. 2017); *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 718 (Tenn. Ct. App. 1999). Even so, we recognize that *Moats'* holding does not control this case, because we are interpreting here the application of the thirteenth juror rule under the Tennessee Rules of Civil Procedure.

In *Moats*, we addressed "whether under Tenn. R. Crim. P. 33(f),[11] a new trial is the required remedy when the record contains statements by the trial court expressing dissatisfaction or disagreement with the weight of the evidence or the jury's verdict, or statements indicating that the trial court misunderstood its responsibility or authority to act" as thirteenth juror. *Moats*, 906 S.W.2d at 434. In that case, the trial court expressed doubts about the weight of the evidence, but ultimately deferred to the jury's verdict without independently approving or disapproving the verdict. *Id.* at 433. While both parties agreed that the trial court had failed to fulfill its role as thirteenth juror, the State

---

[9] Although the rule requiring a trial court to approve or disapprove the jury's verdict was well-settled at common law, *Cumberland Telephone* was the first Tennessee case that employed the term "thirteenth juror." 79 S.W. at 804.

[10] The *Moats* Court noted that no case had previously questioned the propriety of the remand for new trial remedy when a trial court fails to fulfill its duty as thirteenth juror. 906 S.W.2d at 434.

[11] Tennessee Rule of Criminal Procedure 33(f) has since been moved to Tennessee Rule of Criminal Procedure 33(d).

advocated for a remand remedy that would allow the trial court to fulfill its role as thirteenth juror in lieu of a new trial. *Id.* at 434. However, the *Moats* Court reasoned that the passage of time would make such a remedy impracticable:

> The trial judge is in a difficult position to make a thirteenth juror determination after a remand which would not occur until after the case works its way through the appellate courts. By that time, the trial judge is unlikely to have an independent recollection of the demeanor and credibility of all the witnesses. The "human atmosphere" of the trial forum would be lost, and the trial court would be in no better position to evaluate the weight of the evidence than an appellate court.

*Id.* at 435. The Court found that "the totality of the evidence cannot be reproduced with a written record," because a written record lacks the means to assess witness credibility. *Id.* (quoting *Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966)). Due to this lack of means to assess witness credibility, appellate courts decline to review a trial court's thirteenth juror determination. *Id.* "For the same reasons, a trial court is ill-suited to make its thirteenth juror determination by reviewing a record on remand, long after the conclusion of the trial." *Id.* Accordingly, the *Moats* Court held that a new trial was the only remedy under the Tennessee Rules of Criminal Procedure when the trial judge expressed "dissatisfaction or disagreement with the weight of the evidence or the jury's verdict, or statements indicating that the trial court misunderstood its responsibility or authority to act as the thirteenth juror." *Id.* at 435–36.

Justice Drowota disagreed that the passage of time would disenable a trial judge in all cases from serving as thirteenth juror upon remand. *Id.* at 436 (Drowota, J., dissenting). From his experience as a trial judge, some trials and witnesses are "indelibly etched in a trial court's mind," so that a judge would still be able to recall the facts of the case and fulfill its role as thirteenth juror even months after a case weaves its way through the appellate courts and back down on remand. *Id.* However, other cases are less memorable, and in such a trial court would not be able to fulfill its role as thirteenth juror on remand. *Id.* Justice Drowota suggested that no harm would be done in remanding the case to the trial court to determine whether it has "sufficient independent recollection" to fulfill its role as thirteenth juror. *Id.* When a trial court does not have sufficient independent recollection, it can simply order a new trial. *Id.* He proposed that "the important interests of judicial economy and expediency . . . would be greatly furthered by the remand remedy."[12] *Id.*

---

[12] Justice Drowota was in fact an advocate of the thirteenth juror rule. In *State v. Johnson*, a majority of this Court chose not to reinstate the thirteenth juror rule after it had been abolished due to concerns over its constitutionality. 692 S.W.2d 412, 413–14 (Tenn. 1985), *superseded by rule*, Tenn. R. Crim. P. 33. Justice Drowota and one other justice dissented and argued for reinstatement of the thirteenth juror rule, finding the rule "may be the only safeguard available against a miscarriage of justice by the jury." *Id.* at 415 (Drowota, J., dissenting).

Although the automatic remand for new trial remedy precludes the original trial judge from fulfilling his or her role as thirteenth juror upon remand, our law allows successor judges to serve as thirteenth juror when the original trial judge becomes incapacitated during trial or post-trial proceedings. Tennessee Rule of Civil Procedure 63 provides the rule for such situations:

> If a trial or hearing has been commenced and the judge is unable to proceed, any other judge may proceed upon certifying familiarity with the record and determining that the proceedings in the case may be completed without prejudice to the parties. In a trial or hearing without a jury, the successor judge shall at the request of a party recall any witness whose testimony is material and disputed and who is available to testify again without undue burden. In any trial or hearing, with or without a jury, the successor judge may recall any witness.

Tenn. R. Civ. P. 63. However, the ability of a successor judge to serve as thirteenth juror is not absolute. In *Overton v. Lowe*, our Court of Appeals noted that "a judge who does not see and hear the witnesses is at a significant disadvantage as thirteenth juror," especially in a case in which credibility of witnesses is important. No. E2007-00843-COA-R3-CV, 2009 WL 1871946, at *7 (Tenn. Ct. App. June 30, 2009). The *Overton* panel found that in cases in which witness credibility is important, a successor judge ought to order a new trial unless he or she had strong means of independently weighing the evidence. *Id.*

That said, successor judges are not always up a creek without a paddle. While our civil courts have not had an opportunity to develop extensive jurisprudence regarding a successor judge's ability to function as thirteenth juror under Rule 63, several criminal cases provide guidance under the analogous Tennessee Rule of Criminal Procedure 25. *See* Tenn. R. Crim. P. 25. In *State v. Ellis*, this Court found that under Rule 25, the most important factor to a successor judges' ability to function as thirteenth juror is "the extent to which the credibility of one or more material witnesses is actually a significant aspect to the case," and if it is, whether that credibility can be ascertained through reviewing the record. 453 S.W.3d 889, 902–03 (Tenn. 2015). Most indicators of witness credibility can be ascertained through reading the trial transcript. *Id.* at 904. These include a witness' reputation for truth and veracity; intelligence; respectability; interest in the outcome of the trial; feelings about the case, parties, or other witnesses; bias or lack thereof; means of knowledge; reasonableness of statements; and general character. *Id.* Conflicting or corroborating testimony or proof is also a strong indicator of witness credibility. *Id.* Only one indicator, witness demeanor, cannot be ascertained through reading the transcript: "Only if the record justifies the successor judge in concluding that witness *demeanor* was a crucial aspect of the case should the successor judge determine that he cannot independently weigh the evidence." *Id.* at 906 (emphasis in original) (citing *State v.*

*Bilbrey*, 858 S.W.2d 911, 915 (Tenn. Crim. App. 1993) (Tipton, J., concurring)). "Weight and credibility, therefore, are inextricably linked." *Id.* at 900.

Similarly, in *State v. Bilbrey*, Judge Tipton stated that the credibility inquiry is fact-driven and depends on the evidence submitted in each case. 858 S.W.2d at 915 (Tipton, J., concurring). "[C]redibility involves more than demeanor in that it 'apprehends the over-all evaluation of testimony in the light of its rationality or internal consistency and the manner in which it hangs together with other evidence.'" *Id.* (quoting *Carbo v. United States*, 314 F.2d 718, 749 (9th Cir. 1963)). In some cases, strong corroborating evidence makes viewing witness demeanor unnecessary. *Id.*

These principles underlying a successor judge's ability to function as thirteenth juror by weighing the evidence and determining witness credibility—at times through a trial transcript—apply equally to the civil context. Under Tennessee Rule of Civil Procedure 63, a civil trial court must certify familiarity with the record to fulfill the role of thirteenth juror, just as a criminal trial court must under Tennessee Rule of Criminal Procedure 25. *See* Tenn. R. Civ. P. 63; Tenn. R. Crim. P. 25(a)(2). In civil trials, successor judges have the additional advantage of being able to recall witnesses to testify. *See* Tenn. R. Civ. P. 63. Although the burden of proof varies between civil and criminal trial courts, both are tasked with reviewing the record to determine whether the weight of evidence meets their respective burdens of proof. If witness credibility is central to that determination, both are able to use the witness credibility indicators referenced in *Ellis* to determine whether they can fulfill the role of thirteenth juror. *See Ellis*, 453 S.W.3d at 904.

If our law allows successor judges, who have not seen the witnesses or heard their testimony at trial, to review the record to determine whether they can fulfill the role of thirteenth juror, it logically follows that the judge who sat over the original trial ought to be able to do the same. This is especially true in a civil case in which property rights, not life and liberty, are at stake. *Cf. Curran*, 4 S.W.2d at 958. Where, as here, the trial court did not affirmatively disagree with the weight of the evidence but rather misconceived its role as thirteenth juror, the more appropriate remedy is to remand to the trial court to allow it to determine whether it can fulfill its role. Thus, when a trial court fails to fulfill its role as thirteenth juror by applying an incorrect standard or misconceiving its role as thirteenth juror, civil appellate courts no longer are to remand for an automatic new trial. Instead, our civil appellate courts are to remand to allow the trial court to determine whether it can fulfill its role as thirteenth juror under Tennessee Rule of Civil Procedure 59.06.

Upon remand, civil trial courts have discretion to determine whether they are able to fulfill the role of thirteenth juror. Key to this determination is whether they have sufficient independent recollection of the trial, in particular recollection of witness demeanor and witness credibility. *Cf. Moats*, 906 S.W.2d at 436 (Drowota, J., dissenting). It may be that the trial court has sufficient recollection of the case to easily approve or

disapprove the jury's verdict without reviewing the record. *See id.* If the trial is not one that was "indelibly etched in a trial court's mind," *id.*, the court may use all available methods at its disposal to aid its recollection in making the thirteenth juror determination. The court may review the record, transcripts, and trial exhibits just as a successor judge would. *See Ellis*, 453 S.W.3d at 904, 907. In doing so, the court may recall indicators of witness credibility such as witnesses' reputation for truth and veracity; intelligence; respectability; interest in the outcome of the trial; feelings about the case, parties, or other witnesses; bias or lack thereof; means of knowledge; reasonableness of statements; and general character. *See id.* at 904. Corroborating or conflicting evidence or other proof in the record can also be used to recall witness credibility. *See id.*; *Bilbrey*, 858 S.W.2d at 915 (Tipton, J., concurring). If video recording of the trial is available, as in this case, the trial court may use this tool as well.

However, it is important that the trial court possess some modicum of independent recollection of the trial and not rely wholly on the record. In *Moats*, we pointed out that a trial court without independent recollection is no better off than an appellate court in weighing the evidence and fulfilling the role of thirteenth juror. 906 S.W.2d at 435; *see also id.* at 436 (Drowota, J., dissenting) ("First, I agree that in order to perform its duty as thirteenth juror, the trial court must have an independent recollection of the trial proceedings; simply reading the record on remand will not suffice."). A trial court functioning as thirteenth juror without independent recollection would be doing what we have always prohibited our appellate courts from doing. *See James E. Strates Shows, Inc. v. Jakobik*, 554 S.W.2d 613, 616 (Tenn. 1977) ("On appeal the evidence cannot be weighed as in the trial court."). Even successor judges have the ability to recall witnesses in order to view their demeanor while testifying. *See* Tenn. R. Civ. P. 63 ("In any trial or hearing, with or without a jury, the successor judge may recall any witness."). In contrast, the original trial judge has no such advantage upon remand. Thus, the trial court ought to exercise discretion to fulfill the role of thirteenth juror upon remand when it possesses sufficient independent recollection of the trial, or when it is able to refresh its independent recollection upon review of the available record, including video. Thus, independent recollection includes recollection that has been refreshed through review of the record.

If the trial court determines that it is unable to fulfill the role of thirteenth juror, it must order a new trial. The trial court may come to this conclusion if it has insufficient independent recollection after reviewing the record to approve or disapprove the jury's verdict. This is especially so if the court has insufficient independent recollection of witness demeanor and witness credibility, and witness credibility is material to the weight of the evidence. *Cf. Ellis*, 453 S.W.3d at 902. "The time, expense, and trouble of another trial should never be regarded where the justice of a case requires it." *Tate*, 36 Tenn. (4 Sneed) at 595.

Our decision here overrules a long line of prior decisions mandating a new trial as the sole remedy when a civil trial court misconceives its role as thirteenth juror. *See, e.g.*, *Holden*, 682 S.W.2d at 905. The doctrine of stare decisis requires that we not lightly depart from a prior decision that has been implemented and acted upon for some time, and that is not "repugnant to some rule of law of vital importance." *In re Est. of McFarland*, 167 S.W.3d 299, 305 (Tenn. 2005) (quoting *Hall v. Skidmore*, 171 S.W.2d 274, 276 (Tenn. 1943)). However, stare decisis is not a "universal inexorable command" requiring utter inflexibility. *Alcazar v. Hayes*, 982 S.W.2d 845, 852 n. 5 (Tenn. 1998) (quoting *Burnet v. Coronado Oil & Gas Co.*, 285 U.S. 393, 405 (1932) (Brandeis, J., dissenting)). This Court should overturn its precedent when there is "obvious error or unreasonableness in the precedent, changes in conditions which render the precedent obsolete, the likelihood that adherence to precedence would cause greater harm to the community than would disregarding stare decisis, or an inconsistency between precedent and a constitutional provision." *McFarland*, 167 S.W.3d at 306.

Two of these considerations compel our decision here. First, there has been a change in conditions that render precedent dated. *See id.* at 306. Our law has developed in its recognition that multiple aspects of witness credibility can be ascertained from reviewing the record, although witness demeanor cannot. *See Ellis*, 453 S.W.3d at 904. Even so, the availability of video recording in some of our state's trial courts provides those courts a means to recall witness demeanor. The number of our trial courts that currently employ video recording technology is very small; however, those courts ought to be able to use that technology to exercise their discretion as to whether they are able to fulfill the role of thirteenth juror. While we are cautious to create new rules of law based upon the availability of new technology, it is appropriate to do so when the old rules were based upon the express lack of such technology. *See Moats*, 906 S.W.2d at 435 (finding that by the time a case is remanded to the trial court after appeal, "the trial judge is unlikely to have an independent recollection of the demeanor and credibility of all the witnesses" and "[t]he 'human atmosphere' of the trial forum would be lost").

Second, our holding promotes important policies central to the administration of justice in Tennessee, such that diverging from precedent benefits the community more than adhering to it. *See McFarland*, 167 S.W.3d at 306. Allowing trial courts discretion upon remand to determine whether they are able to fulfill the role of thirteenth juror furthers the ends of judicial economy and expediency. *Cf. Moats*, 906 S.W.2d at 436 (Drowota, J., dissenting). A trial court may very well independently weigh the evidence and agree with the jury's verdict; yet if it mistakenly makes statements implying deference to the jury's verdict, our law formerly would have demanded a new trial, regardless of whether the original trial had lasted two days or two months. A new jury must be impaneled, and the trial court is embroiled in the same trial under the presumption that this will enable the judge to fulfill his or her role as thirteenth juror, when perhaps that judge is able to fulfill the role of thirteenth juror before the trial ever starts. While the time and expense of a new

trial are never to be considered when justice demands it, a new trial is not the only way to achieve justice in this situation. Indeed, other jurisdictions remand for the trial court to fulfill its thirteenth juror role when it misconceives that role. *See, e.g.*, *Holmes v. State*, 832 S.E.2d 392, 395–96 (Ga. 2019); *State v. Long*, 590 So.2d 694, 702–03 (La. 1991); *United States v. Mallory*, 902 F.3d 584, 597 (6th Cir. 2018) (remanding for district court to apply correct thirteenth juror standard). Our trial courts are capable of exercising their discretion judiciously upon remand to determine whether they are truly able to independently weigh the evidence and fulfill the role of thirteenth juror. We trust that our trial courts will guard against miscarriage of justice by ordering a new trial when justice demands it.

Nevertheless, our decision here has limits. We decline Defendants' invitation to overrule *Moats* and create a new thirteenth juror rule that applies to all civil and criminal trials in Tennessee. *Moats* was a criminal case interpreting the Tennessee Rules of Criminal Procedure. *See* 906 S.W.2d at 434 (describing issue presented as "*whether under Tenn. R. Crim. P. 33(f)*, a new trial is the required remedy . . . ." (emphasis added)). On the other hand, this is a civil case interpreting the Tennessee Rules of Civil Procedure. *Moats* is not controlling law with respect to this case or with respect to the Tennessee Rules of Civil Procedure. We decline to overrule decisions that are not controlling law. Our decision here does not change *Moats'* application in criminal cases.

*Unjust Enrichment*

The next issue is whether the Court of Appeals erred in upholding the trial court's dismissal of Plaintiffs' unjust enrichment claims following a hearing on Defendants' motion for judgment on the pleadings. "Unjust enrichment is a quasi-contractual theory or is a contract implied-in-law in which a court may impose a contractual obligation where one does not exist." *Whitehaven Cmty. Baptist Church v. Holloway*, 973 S.W.2d 592, 596 (Tenn. 1998) (citing *Paschall's Inc. v. Dozier*, 407 S.W.2d 150, 154–55 (Tenn. 1966)). Under an unjust enrichment theory, courts impose a contractual obligation where there is "no contract between the parties or the contract has become unenforceable or invalid," and the defendant will be unjustly enriched unless the court imposes a quasi-contractual obligation. *Id.* We stated that the elements of an unjust enrichment claim are (1) "[a] benefit conferred upon the defendant by the plaintiff", (2) "appreciation by the defendant of such benefit", and (3) "acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof." *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005) (internal quotation marks omitted); *see also Paschall's*, 407 S.W.2d at 154. "The most significant requirement of an unjust enrichment claim is that the benefit to the defendant be unjust." *Freeman Indus.*, 172 S.W.3d at 525.

Some lower courts, including the Court of Appeals in this case, have applied a five-element test from *Doe v. HCA Health Services of Tennessee, Inc.*, 46 S.W.3d 191, 198 (Tenn. 2001) to unjust enrichment claims.[13] *See, e.g.*, *Family Trust*, 2022 WL 17086782, at *13 n. 5; *Educ. Res. Inst. v. Moss*, No. M2005-02378-COA-R3-CV, 2006 WL 2080382, at *2–3 (Tenn. Ct. App. Jul. 26, 2006). Yet *Doe* was a quantum meruit case, not an unjust enrichment case. While this Court said in *Paschall's* that actions brought under theories of unjust enrichment, quasi contract, contract implied in law, and quantum meruit are "essentially the same" and are often used interchangeably, we did not connote that these causes of action are exactly the same and have the same elements. 407 S.W.2d at 154. Four years after *Doe*, we set forth three elements for unjust enrichment claims in *Freeman Industries*. 172 S.W.3d at 525. For these reasons, the three-element test from *Freeman Industries* is the proper test to apply in this case alleging unjust enrichment. *See id.*

Both the trial court and Court of Appeals found that *B & L Corp. v. Thomas and Thorngren, Inc.*, 162 S.W.3d at 217, precluded recovery under an unjust enrichment claim in this case. *Family Trust*, 2022 WL 17086782, at *14–15. In *B & L Corp.*, defendants were two former executives of the plaintiff company who took some of plaintiff's employees and clients and started their own company that competed against plaintiff. 162 S.W.3d at 194–95. Plaintiff asserted claims for breach of fiduciary duty, conversion of tangible property, unfair competition, and unjust enrichment, among other claims. *Id.* at 195. As to unjust enrichment, the dispositive issue was whether the plaintiff's "business property and confidential information" were benefits conferred upon the defendants that warranted recovery under an unjust enrichment claim. *Id.* at 217. The court found that plaintiffs could not recover under an unjust enrichment theory because "[q]uasi-contractual theory of recovery involves the *willing* conferring of a benefit by one party to the other and is contraindicated when the benefit alleged is *involuntarily conferred*." *Id.* (emphases added).

---

[13] The five elements set forth in *Doe* for quantum meruit claims are:

(1) There is no existing, enforceable contract between the parties covering the same subject matter;
(2) The party seeking recovery proves that it provided valuable goods or services;
(3) The party to be charged received the goods or services;
(4) The circumstances indicate that the parties to the transaction should have reasonably understood that the person providing the goods or services expected to be compensated; and
(5) The circumstances demonstrate that it would be unjust for a party to retain the goods or services without payment.

*Doe*, 46 S.W.3d at 198 (citing *Swafford v. Harris*, 967 S.W.2d 319, 324 (Tenn. 1998)).

However, the *B & L Corp.* court cited no authority to substantiate this statement. *See id.* Moreover, we are able to find none. This statement is dicta, and inaccurate dicta at that. This Court has never limited unjust enrichment in the manner suggested in *B & L Corp.* To be sure, in many unjust enrichment cases a party voluntarily confers a benefit on another party in a quasi-contractual manner, and the second party's failure to provide compensation resembles a breach of contract. *See, e.g.*, *Paschall's*, 407 S.W.2d at 151–52. But the claim for unjust enrichment is not limited to such circumstances. Nor is the voluntary conferral of a benefit one of the three elements of unjust enrichment from *Freeman Industries*. *See* 172 S.W.3d at 525.

We are likewise unpersuaded by Defendants' argument that unjust enrichment "contemplates circumstances in which a plaintiff provides goods or services expecting payment but lacks an enforceable contract to compel payment." *Whitehaven* and *Paschall's* do not limit unjust enrichment in the way in which Defendants suggest. *See Whitehaven*, 973 S.W.2d at 596–97; *Paschall's*, 407 S.W.2d at 155–56. Rather, we emphasized that the most important requirement for unjust enrichment claims is "that the enrichment to the defendant be unjust." *Paschall's*, 407 S.W.2d at 155. As the Restatement of Restitution recognizes, a benefit unjustly conferred on a party is subject to restitution, regardless of whether the harmed party knowingly conferred the benefit on him. *See, e.g.*, Restatement (Third) of Restitution § 44 (2011) ("A person who obtains a benefit by conscious interference with a claimant's legally protected interests . . . is liable in restitution as necessary to prevent unjust enrichment . . . ."); Restatement (First) of Restitution § 130 (1937) ("A person who has tortiously acquired or retained a title to land, chattels, or choses in action, is under a duty of restitution to the person entitled thereto.").

Moreover, the facts of this case do not negate a quasi-contractual situation. Walker contracted with Irvin to buy her redemption right, which he then used to redeem the Irvin property. He could have contracted with the actual heirs of the other properties to buy their redemption rights as well. Instead, he filed forged documents that purported to be contracts between REO and alleged heirs of the properties. In the case of the Chambers property, this allowed him to later sell the property at a profit. A jury was entitled to decide whether these facts constituted a claim for unjust enrichment; thus, the trial court's dismissal of the claim on a motion for judgment on the pleadings was improper. *Cf. McClenahan*, 806 S.W.2d at 769.

Therefore, we overrule *B & L Corp.* to the extent that it holds unjust enrichment requires a willing or voluntary conferment of a benefit from one party to the other. *See* 162 S.W.3d at 217.

*Intentional Misappropriation of a Right of Redemption*

Our final issue is whether Tennessee recognizes a tort for the intentional misappropriation of a right of redemption.[14] Plaintiffs argue that because Tennessee Code Annotated sections 67-5-2701 and 67-5-2702 provide a right of redemption to persons possessing an interest in a property sold at tax sale, there should be a tort remedy for misappropriation or conversion of that right. Tenn. Code Ann. §§ 67-5-2701, -2702.

However, our courts have consistently declined to recognize causes of action for misappropriation or conversion of intangible property rights. "Conversion is the appropriation of *tangible* property to a party's own use in exclusion or in defiance of the owner's rights." *PNC Multifamily Cap. Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525, 553 (Tenn. Ct. App. 2012) (emphasis added); *see also Barger v. Webb*, 391 S.W.2d 664, 665 (Tenn. 1965). A right of redemption is an intangible property right as it cannot be "seen, felt, weighed and measured." *Corp. Catering, Inc. v. Corp. Catering, LLC*, No. M1997-00230-COA-R3-CV, 2001 WL 266041, at *5 (Tenn. Ct. App. Mar. 20, 2001). Our Court of Appeals has consistently held that Tennessee does not recognize claims for conversion of intangible property. *See, e.g.*, *Wells v. Chattanooga Bakery, Inc.*, 448 S.W.3d 381, 392 (Tenn. Ct. App. 2014) ("[A]n action for the conversion of intangible personal property is not recognized in Tennessee."); *Ralph v. Pipkin*, 183 S.W.3d 362, 368 (Tenn. Ct. App. 2005); *B & L Corp. v. Thomas & Thorngren, Inc.*, 917 S.W.2d 674, 680 (Tenn. Ct. App. 1995) (finding no authority in Tennessee supported a claim of conversion of intangible property); *Corp. Catering*, 2001 WL 266041, at *5 ("[Plaintiff's] conversion claim fails to state a claim upon which relief can be granted because the property allegedly converted is intangible personal property.").

Moreover, we find Plaintiffs' arguments comparing statutory rights of redemption to incorporeal hereditaments unavailing. Incorporeal hereditaments, such as easements and profits à prendre, run appurtenant to the land and may be created by deed. *See, e.g.*, *Stanton v. T. L. Herbert & Sons*, 211 S.W. 353, 353–54 (Tenn. 1919). As a result, interference with an easement or other incorporeal hereditament is actionable as an invasion of a real property right. A right of redemption, on the other hand, may not be created by deed. While a right of redemption may be assignable by deed, the sole source of this right is statutory. *See* Tenn. Code Ann. §§ 67-5-2701, -2702. In creating this statutory right, the General Assembly did not create a cause of action for misappropriation of the right. In addition, a right of redemption is not and has never been one of the incorporeal hereditaments recognized by common law. *Cf.* 2 William Blackstone, Commentaries 21.

---

[14] Plaintiffs styled this claim as "theft of the right of redemption" in the trial court, "intentional interference with the right of redemption" or "misappropriation of the Plaintiffs' redemption rights" in the Court of Appeals, and "intentional misappropriation of the right of redemption" in this Court.

We agree with the Court of Appeals that Tennessee law does not recognize claims for conversion of intangible property rights. Therefore, we decline to recognize a claim for misappropriation or conversion of a statutory right of redemption.

## CONCLUSION

In conclusion, we hold that remand to the trial court to determine whether it is able to fulfill the role of thirteenth juror is an available remedy when a civil trial court misconceives its role as thirteenth juror or applies an incorrect standard. We further hold that the claim of unjust enrichment does not require a voluntary or willing conferring of a benefit, and overrule *B & L Corp.* to the extent that it holds otherwise. 162 S.W.3d at 217. Finally, we decline to create a new tort for misappropriation or conversion of a statutory right of redemption.

We affirm in part and reverse in part the decision of the Court of Appeals, and remand to the trial court for proceedings consistent with this opinion.

_____
DWIGHT E. TARWATER, JUSTICE